WESTERN AND ATLANTIC RAILROAD CO. *v.* BRYANT.

The allegations of fact upon which the plaintiff relied as showing that the defendant railroad company was liable to him in damages because of personal injuries sustained by him while in its employ and in the discharge of his duties disclosed that the negligent acts of which he complained were the proximate cause of his injury, and that he did not voluntarily expose himself to a known and obvious danger which was impending and which he should have taken immediate steps to avoid, instead of obeying the orders of the company's foreman, to whose directions he was subject.

Argued April 19,—Decided May 15, 1905.

Action for damages. Before Judge Fite. Whitfield superior court. November 14, 1904.

The question presented for determination in this case is whether or not the court below erred in overruling a demurrer interposed by the defendant railroad company to the plaintiff's petition as amended. The facts alleged were substantially as follows: On February 15, 1904, the plaintiff, J. T. Bryant, was employed by the company to work under one of its foremen, McFarland, on push and lever cars, and to do track work about two miles south of Dalton, the plaintiff being one of a crew working under McFarland on a section which extended from Dalton to a point some six miles below that place. On the date named the plaintiff was working with a squad of hands between Loughridge and Dalton, and was making use of the push and lever cars. Before these cars were started from Loughridge crossing, the foreman had sent one of the crew towards Dalton for the purpose of flagging any train of the defend-

ant company which might be approaching from Dalton. This member of the crew flagged a freight-train at Dalton and notified the engineer to look out for McFarland's push and lever cars, informing the engineer that these cars were moving towards Dalton, and stating about where they would be found. The servants of the company in charge of the train nevertheless ran the freight-train at a rapid rate of speed toward the point where the push and lever cars were being used; the foreman, hearing the train approaching, directed the plaintiff and the other members of the crew to reverse the direction of the push and lever cars and to push them in the opposite direction; plaintiff obeyed this order and undertook, with the other hands, to push the cars southward, and was in the act of doing so when the foreman, finding that the freight-train continued to approach at a rapid rate of speed, warned the crew to leave the push and lever cars and get out of the way of the rapidly approaching train. A track of the Southern Railway Company ran alongside of the track of the defendant, only a few feet distant. The plaintiff, "in the exercise of all care, when warned by his foreman to leave said push and lever cars, sought to escape from the approaching collision between said push and lever cars and said approaching freight-engine and endeavor to get away. . . The collision between the approaching freight-train and said push and lever cars was calculated to throw said cars or fragments of the same some distance from the track, and for [plaintiff] to reach a point of safety it was necessary for him to cross the track of the Southern Railway Company.' . . The negligence of the agents of the defendant in disregarding the flag and bringing their freight-train at a rapid rate of speed toward said push and lever cars placed the property of the defendant company and the lives of its employees in great danger, and [plaintiff] was discharging his duty in obedience to the orders of his foreman when he sought, with the balance of the crew, to push said push and lever cars away from said approaching freight-train, so as to give an additional opportunity for the same to be checked before it struck said cars. . . When engaged in this work, [plaintiff's] entire attention was absorbed in said work, and he was compelled to occupy a bent position, so that he had no view of the track in front of him, and his back was towards the freight-train approaching on the line of the defendant. . . When [he] and the other employees upon said push

and lever cars received their notice warning them to get out of the way of the approaching freight-train, in the exercise of all care he endeavored to escape from the emergency brought upon him by the negligent conduct of the employees of the defendant;" he at the time had no knowledge of "the approach of the train upon the Southern Railway, and no time for stopping or looking when he was warned to escape from the approaching freight-train;" and he "used all care in his efforts to escape, but was struck by an engine on the Southern Railway, which had approached at a rate of speed of not less than sixty miles an hour." Plaintiff had no warning of the approach of this train, and the noise of the freight-train prevented him from hearing its approach. He was free from fault; the defendant was negligent in that said freight-train ran down at a rapid rate of speed upon the push and lever cars with which he was at work; and the defendant was also negligent in that the foreman, under whose orders he undertook, with the other members of the crew, to push the cars away from the approaching freight-train, did not at an earlier time warn him of the close approach of the freight-train, and in that the foreman did not also warn him of the approach of the train on the Southern Railway, all of which negligence contributed to and caused the injuries sustained by him. He was knocked down, his left arm was broken and had to be amputated an inch below the elbow joint, three ribs were broken, his right lung was punctured, and he received other bodily injuries. He was twenty-four years old, was earning one dollar per day, and at the time he was injured was in the discharge of his duties under his employment by the defendant company. The freight-train struck the push and lever cars, knocking them about sixty feet, the collision taking place a few moments after plaintiff was struck by the Southern Railway engine. "It was the duty of defendant's foreman to watch over and supervise plaintiff and other employees working under the said foreman, and to warn them of the approach of said freight-train in time for them to reach a place of safety in case said freight-train did not stop. It was also the duty of said foreman to warn those under him, who were moving said push and lever cars under his direction, of any other danger which surrounded them. Defendant's foreman was aware of the position which plaintiff necessarily occupied while performing the duties required of him, and was aware of the fact that

plaintiff could not see the freight-train of defendant approaching him from behind, or the train of the Southern Railway Company approaching him from the front; the duty was upon defendant's foreman to notify plaintiff to leave the push and lever cars under circumstances and at a place where it was reasonably safe for him to do so." "The defendant was negligent in that its foreman for the first time notified plaintiff to leave the push and lever cars at a place and under circumstances that were dangerous, and which caused the plaintiff's injuries without negligence on the part of plaintiff contributing thereto."

Besides demurring to the petition generally, the railroad company specially demurred thereto on the following grounds: "1st. It is therein shown that the plaintiff, after being apprised of danger in which he was placed by the alleged negligence of the defendant's servants, and after having sufficient time and opportunity to free himself therefrom and place himself in a safe place, continued in a dangerous position brought about by the alleged negligence of defendant's servant, and declined to escape therefrom. 2d. It is shown by plaintiff's petition that his injury was not the proximate result of defendant's alleged negligence, but was caused by an independent third party, to wit, the engine controlled and operated on the tracks of the Southern Railway Company by the employees of said Southern Railway Company, and not controlled or operated directly or indirectly by this defendant or any of its employees, and was not caused by any act of any servant of this defendant, nor was any act of this defendant or any of its employees the proximate cause of plaintiff's injuries."

*Payne & Tye* and *R. J. & J. McCamy*, for plaintiff in error.
*Hoke Smith, H. C. Peeples, W. C. Martin*, and *Marion Smith*, contra.

EVANS, J. (After stating the facts.) That the employees of the defendant railroad company were guilty of acts of negligence is not controverted; it is insisted that such acts were not the proximate cause of the injury. What are the facts alleged bearing on this question? Assuming, for the present, that the plaintiff was not guilty of contributory negligence, it appears, (1) that the negligence of the defendant's train crew in approaching at a rapid rate the cars being operated by the section gang, notwithstanding

notice of its whereabouts had previously been given to the engineer, brought about the necessity of reversing these cars and pushing them southward in order to endeavor to prevent a collision; (2) the continuing negligence of the train crew in not checking the speed of the train rendered this precautionary measure of no avail; (3) the section foreman, instead of warning his crew that the train continued to approach rapidly and giving his men an opportunity to reach a place of safety, hazarded their lives by persisting in his effort to prevent the impending collision; (4) he knew of the position occupied by the plaintiff and that the plaintiff could not observe for himself the increasing danger in his rear, or observe the new danger in front presented by the approach of a train on the Southern Railway track, yet the foreman gave to the plaintiff no hint of this new danger, nor warned him in time to leave his post of duty after the danger from behind had become imminent; (5) when the foreman did give his tardy warning, the only avenue of escape from the immediate and pressing danger in the rear, which was open to the plaintiff, lay across the track of the Southern Railway Company; (6) knowing only of the impending collision, and having been unable to either see or hear the train of the Southern Railway Company, the plaintiff undertook to save himself by availing himself of his only apparent avenue of escape, which was immediately cut off by the rapidly moving train approaching on the track of that company. To place one in a situation where he will be instantly killed if he remains where he is, and to thus force him to throw himself into the very teeth of an unknown peril in a futile effort to escape injury, is a very practical way of furnishing the efficient and proximate cause of his being physically injured by the physical operation of the unknown peril into which he is driven. Not only does the plaintiff allege that he was negligently placed in such a situation, but he goes further and asserts that his lack of knowledge of the unknown peril to which he was exposed was due to the negligent omission of the foreman to give him notice thereof before he was actually entrapped between a known and an unknown peril, both of which threatened his life.

As was pertinently remarked by Lord Ellenborough in Jones v. Boyce, 1 Stark. 493, one who places a man "in such a situation that he must adopt a perilous alternative is responsible for

all the consequences." Since the decision in that case, which has been approved and universally followed in this country, the defense that one negligently placed in such a situation was actually hurt, not by the person who placed him in peril, but by his own act in endeavoring to escape therefrom, whereby he came into contact with another, independent, and overwhelming agency, of which he was unable to gain the mastery, has lost all novelty. See cases cited in note to Gilson v. Delaware Canal Co., 36 Am. St. Rep. 847–848. "It is well settled that the mere fact that there have been intervening causes between the defendant's negligence and the plaintiff's injuries is not sufficient in law to relieve the former from liability; that is to say, the plaintiff's injuries may yet be the natural and proximate in law, although between the defendant's negligence and the injuries other causes, conditions, or agencies have operated." 21 Am. & Eng. Enc. L. 490. The "causal connection must be actually broken, the sequence interrupted, in order to relieve the defendant from responsibility. The mere fact that another person concurs or co-operates in producing the injury or contributes thereto, in any degree, whether large or small, is of no importance." 1 Shear. & Redf. Negl. § 31; see also Missouri Ry. Co. v. Rogers, 40 S. W. 956; Lundeen v. Electric Light Co., 41 Pac. 995. "If one person wrongfully places another in a position of peril, whereby the latter makes a natural and reasonable effort to escape the threatened danger, the former is responsible for the consequences of such effort, precisely as if he had immediately caused them." Watson, Dam. Per. Inj. § 66. This doctrine was applied by this court in *Simmons* v. *Railway Co.*, 92 *Ga.* 658. The plaintiff, a brakeman employed by the defendant company, was put in imminent peril by the negligence of its engineer in not stopping at a switch in order that a train coming from the opposite direction might pass; a collision between the two trains was momentarily expected; the plaintiff and the conductor vainly endeavored to signal the engineer with their lanterns, but the lights went out, and the conductor ordered the plaintiff to run forward and tell the engineer to stop his train. In attempting to execute this order, the plaintiff, while passing over a coal-car, lost his footing and fell, sustaining injuries. The defense of the defendant company was that the negligence of its engineer was not the proximate cause of these injuries, which re-

sulted from a large lump of coal over which the plaintiff fell; but our present Chief Justice effectively disposed of this contention by saying that the company wrongfully placed the plaintiff in a situation of peril, giving him no alternative save to jump from the moving train or endeavor, as he did, to stop it in time to avoid the expected collision; had he jumped and struck the lump of coal or any other object on the ground, any injury so sustained would result from the act of negligence charged, and the fact that he was injured while jumping from one part of the train to another in an effort to effect his escape from the danger by procuring the engineer to stop the train, did not make such negligence any the less the proximate cause of his injury. A wrong-doer can not avail himself of the plea that he only produced the fright which caused another to injure himself in an attempt to guard himself from the threatened danger. Ellick v. Wilson, 79 N. W. 152; San Antonio Ry. Co. v. Peterson, 49 S. W. 924. It may, in the present case, be conceded that the foreman of the defendant company was not negligent in not anticipating that a train of the Southern Railway Company might come along and cut off the plaintiff's only avenue of escape from the impending danger in his rear. Still, as the foreman failed to give warning till immediate flight therefrom was rendered imperative and the plaintiff was thus put in peril of his life, the company would be liable if there had been no approaching train on the parallel railroad track and the plaintiff had been injured by falling in his precipitate haste in endeavoring to cross the track and reach a point of safety. The foreman might well have foreseen that if the plaintiff was forced to make undue haste in an effort to get out of his perilous situation, he might be injured in various ways. "Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that some injury would likely result therefrom, not that the specific injury would result." Atchison Ry. Co. v. Parry, 31 Am. & Eng. R. Cas. 215; *Mayor of Macon* v. *Dykes*, 103 *Ga.* 848. Any injury which ordinary prudence would suggest as likely to result from the act of negligence committed would be the proximate result of such negligence. Township *v.* Graver, 125 Pa. St. 24; Johnson *v.* Tel. Exchange Co., 48. Minn. 433. The test is not whether the foreman could

reasonably have anticipated that the plaintiff would be run over by a train on the parallel track, but whether the foreman should have foreseen that if timely warning was not given to the plaintiff to leave his post of duty, he might be subjected to injury, not only from the obvious danger of the impending collision, but from other wholly independent, but existing, sources of danger.    1 Shear. & Redf. Negl. § 29.    Thus, in *W. & A. R. Co.* v. *Bailey,* 105 *Ga.* 100, while it could not reasonably be expected of the company's engineer to anticipate that if he recklessly ran over a trespasser on the track, the trespasser's body would be hurled against another employee of the company who was at his post of duty, the company was held liable for injuries in this manner sustained by such employee.

We are by no means prepared to say, however, that the precise injury sustained by the plaintiff in the present case was not one which might have been anticipated.    The parallel track of the Southern Railway Company represented something more than a feature of the landscape at the point where the plaintiff was run over; the company was engaged in the serious business of transporting freight and passengers, and employed the customary means used in conducting such a business ; trains ran, and were to be expected to run on that railroad.    Long since, this court called attention to the fact that the employees of a company so engaged were in a position to realize that trains might be run along the track at any and all times; and in *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152, 157, Mr. Justice Cobb said : " If a railway company is bound to anticipate and apprehend that one left in a helpless condition in a perilous place upon its tracks through its negligence may be injured by one of its own engines or trains running thereon, is it not equally bound to so anticipate and apprehend any injury which might result to such person from an engine of another company which the first company knew had a right to and did actually use the tracks from time to time?    It would indeed bring about a curious result if the defendant would be liable in such a case only when the second engine or train was owned by it."    The result reached in that case was that the negligence of the defendant, which caused the plaintiff's son to be thrown off a train onto its track, where he lay insensible till a train of another company came along and ran over him, was the proximate cause of his death, the

crew of that train being blameless.　Had the plaintiff in this case been hurt by a train northward bound on the defendant company's track, the approach of which the foreman failed to observe, though he kept his men pushing the cars towards it, the company would surely not be in a position to say that common foresight could not have suggested the possibility of there being such a train, and therefore its foreman was under no duty to maintain a lookout in the direction from which it came.　And it seems none the less reasonable to conclude that the probability of the Southern Railway Company using its parallel track for the purpose of conducting its business in usual course and with customary means was a probability which human foresight might have suggested to a man of ordinary care and prudence.

The allegations of the petition do not show that the plaintiff voluntarily exposed himself to a known and obvious danger which was impending at the time he obeyed the order of the foreman to reverse the push and lever cars and propel them in the opposite direction from that in which they had been moving. The fair inference from the facts recited is, that the foreman and the men working under his direction pursued a safe course in so doing, acting upon the reasonable assumption that the crew of the freight-train would take all necessary steps to reduce the speed of the train.　According to the allegations of the petition, the plaintiff would have committed a breach of his duty had he refused to obey this order of the foreman, and it was not until afterwards, when it became apparent that the trainmen were not checking the speed of the approaching train, that it was proper and necessary that the men in charge of the push and lever cars should abandon them to their fate and seek a place of safety for themselves.　Nor, under the facts alleged, was the plaintiff chargeable with fault because he did not forsake his post of duty at the appropriate moment, but relied on the foreman to give him timely warning.

*Judgment affirmed.　All the Justices concur, except Candler, J., absent.*