20097, 20098.  MATHIS *v.* MATHIS.

DECIDED AUGUST 29, 1930.  REHEARING DENIED SEPTEMBER 29, 1930.

*Bryan & Middlebrooks, Hollis Fort,* for plaintiff in error.
*W. W. Dykes,* contra.

BELL, J. Mr. and Mrs. E. T. Mathis (otherwise referred to as Evan T. and Mrs. Lois Mathis) brought separate suits for personal injuries against T. H. Mathis; and upon identical allegations and evidence the two cases were tried together, and resulted in verdicts for the plaintiffs for $2,500 and $5,000 respectively. The court overruled the defendant's separate motions for a new trial, and he excepted. Accordingly, we will decide the cases together, but will refer to the various parts of the record either in the singular or in the plural as convenience or facility may suggest.

E. T. Mathis and T. H. Mathis were brothers, and lived in Americus, Georgia. On December 3, 1927, both were desirous of attending a game of football in Atlanta, and were going in separate cars. For reasons beneficial to T. H., the brothers exchanged cars for the occasion, so that the plaintiffs, Mr. and Mrs. E. T. Mathis, were to go in the car of the defendant, T. H. Mathis, which was a Chrysler roadster. They accordingly started in this vehicle, but at a certain point en route the left front wheel from some cause locked and ceased to turn, with the result that the car swerved and ran off an embankment, and both the plaintiffs were injured. There is no question that the verdicts were entirely reasonable from the standpoint of the damage sustained, and the cases are such as to excite the profoundest sympathy for the plaintiffs; but we are constrained to the view that the plaintiffs failed to prove the negligence alleged, and, therefore, that the court should have granted new trials upon the general grounds of the motions.

The petition in each case alleged "that the brakes on said Chrysler car belonging to the said T. H. Mathis was in a seriously defective condition, so much so that they were not dependable and were liable to clamp the brake-bands on the wheel at any time, and the said T. H. Mathis knew of the defective condition of the brakes on said automobile, and did not advise this petitioner of same;" and that the defendant "was personally negligent in connection with said matter in the following respects, to wit: (a) That said T. H. Mathis knew that the brakes on his said automobile were in bad condition and could not be depended upon to operate as they should; (b) That said brakes were what is known as hydraulic brakes, and when in a defective condition are liable to clamp and lock the wheels without any effort on the part of the driver to apply the brakes, which was known to T. H. Mathis; (c)

The said T. H. Mathis, knowing of such defective condition, per-mitted this petitioner to drive said automobile on said occasion without advising petitioner of said defect." The cases were planted absolutely upon the theory that "the brake on the front left wheel, on account of its defective condition, clamped the brake-band on the said wheel, which completely locked the wheel; and before [the driver, E. T. Mathis] had time to apply all of his brakes and stop the car, the locking of said left wheel threw the car immediately to the left and over the high precipice of said embankment." Such were the allegations in each petition, and by them the plaintiffs are bound. *New Zealand Fire Ins. Co.* v. *Brewer,* 29 *Ga. App.* 773(6) (116 S. E. 922).

The evidence showed without dispute that for some reason the wheel became locked, as averred in the petition, and may have presented an issue (but this is not decided) as to whether the oc-currence was the result of a defective brake. The evidence also indicated that the defendant knew that the brakes were defective in a certain particular, and that he failed to inform the plaintiffs, or either of them, of this fact; but there was no proof whatever that he knew of any such defect as that described in the petition, and the evidence was conclusive that the defect of which he had knowledge would not have caused a clamping or locking of the wheel, but would have produced an absolutely opposite result. The defendant had intended to use his own car for the Atlanta trip, which, with a rumble-seat, would have accommodated his party of four if the weather had continued good; but on the morning in question the weather became inclement, so that those who might have ridden in the rumble-seat would have suffered discomfort; and it was for this reason that the defendant desired to exchange his car for the Ford sedan which the plaintiffs had expected to use. In order to have his car in proper condition for the trip, the de-fendant had placed it in a garage for repairs to the brakes, and also to have a leaf put in one of the springs; and after the agreement to exchange, the plaintiff, E. T. Mathis, got the car from this garage. The car was equipped with hydraulic brakes, and the defendant had owned it for at least four months, during which time he had driven it constantly.

The defendant was introduced as a witness for the plaintiff, and testified: "I had experienced trouble with the brakes. The

brakes had been giving trouble ever since I had the car. The trouble that I always had with the brakes was leaking out, having no brakes at all at times. As to what I mean by leaking and having no brakes, if you press the brake pedal down it would have no effect whatever. Before this accident I had not ever had any trouble by unusual clamping of the brakes, or anything of that kind. After this, I recall the accident that Mr. Evan T. Mathis had, where he and his wife were injured; about that time I had the car fixed up and used it. I had trouble with the brakes immediately after that. As to how soon after the wreck the car was used again by me—I should say it was six or seven weeks after the wreck before the car was fully repaired. When I got my car back and started to using it, as to whether the brakes were in the same condition as they were at the time of the accident when Evan T. Mathis was using it, I don't know. I did not make an examination to find out. When I turned it over to Evan T. Mathis, the brakes were leaking and had been leaking and continued to leak after that trouble until I got rid of the car. That continued to exist at the time you [I?] got it back. When I started to using the car then after I got it back, I found the condition of the brakes exactly as it was at the time Mr. Evan Mathis used it. It continued in that condition until I got rid of the car. As to what happened to it, at one time the left front wheel began to drag out in the rear, and the right rear brake-band heated up simply to where I had to stop the car; that was in the next three or four weeks after I began to drive the car again. That was the first time it ever clamped with me at all. As to whether I said it clamped and fastened and the wheel dragged,—no, sir, the wheel did not drag, the brake-band dragged and the band, so that it would pull the car around, and did not lock the wheel at the time I drove it, but pulled it on the side where the brake-band dragged. That was on the left front wheel that time. That caused it to pull to the left. At the time I turned this car over to Evan Mathis on December 3, 1927, and to Mrs. Lois Mathis, I did not tell them of that condition that I have testified to. On the morning of December 3, 1927, or the afternoon of December 2, 1927, when I turned the car over to Evan T. Mathis and Mrs. Mathis to drive to Atlanta, I did not tell them of the condition of the brakes at that time, that I knew of it at that time, the time I just testified

about. . . It was a Chrysler 70, and had four-wheel brakes on it, operated by hydraulic pressure. I have been told that the hydraulic pressure is transmitted from the brake-pedal when you put your foot on it, through a master cylinder out into four pipes or lines that run to each brake-drum, but I have not followed it up. I don't know anything about the system. I know when you press the pedal it is supposed to put on the brakes. . . I spoke about the fluid that came out around the wheels down there. As to where that fluid comes from, I know they put it in the car in the cylinder up under the hood. I don't know where it comes from, or how it gets to the wheel. As to what effect the leakage of the fluid has on the brakes, when my brakes would go down, they would tell me that the fluid had leaked out of it. There is a little place up under the hood with a pump on it. When my brakes would go down, I would hit that pump a few licks, like that [illustrating], and it takes up the brakes and puts pressure in there. The loss of this fluid had the effect of keeping the brakes from clamping down on the brake-drums. As to whether or not instead of having the effect of locking the wheel it had the opposite effect, —when I would have my brakes repaired I had no brakes at all; they would say that the fluid had leaked out. When I had it repaired I did so because when I pressed the lever down it would not hold the wheel. It did not have the effect of clamping or locking the left front wheel, or any other wheel, before this accident. I never knew of that car locking the wheels before that time. I was preparing to use that automobile to go to the Tech game myself. I had carried it to the Americus Automobile Company. My brother, one of the plaintiffs in this case, worked there; he is assistant manager of the garage where I left my car to have it repaired. I had placed the car at the garage before the Tech game, for the purpose of having his garage put brake fluid into the brakes and fix the spring, preparatory to making the trip to Atlanta. All that I knew about the car that needed repairs, that I might have trouble with, was the brakes and springs. I didn't know of any trouble about locking; I didn't expect it to lock. I was going to use the car to drive up to Atlanta. I was going to take that car from plaintiff's garage just as they turned it over to me and drive it to Atlanta, as I had always done. I felt free and easy that the car was in good condition to go to Atlanta. . .

I had driven the car myself previously, and I knew the brakes were in the bad condition which I testified about. I knew they were leaky brakes; they had leaked a good many times. I had driven it that way, and I knew the brakes in such condition were unsafe and bad to operate. I had an experience in Atlanta one day with it, on account of these brakes; the brakes seemingly didn't hold, and we ran into the Oldsmobile garage, put the brakes on, and found I didn't have none, and run into the wall. At the time I turned this car over to my brother, I did not tell him that the brakes were bad or dangerous, anything at all. . . I told my brother to go to the garage and get the car that morning; that was from his own garage. I told him to buy chains and charge them to me; that he might have trouble skidding, and I left that for him to do, and use them as he wanted to do and take them to Atlanta; that was optional with him. The car was put in the garage to have the brakes adjusted and to have the spring fixed. I did not tell Mr. Evan Mathis and Mrs. Lois Mathis about this condition."

The plaintiff, E. T. Mathis, testified that the wheel locked and drew the car off the embankment, when he was traveling at a speed of about 30 miles per hour, and without any application or use of the brakes whatever on his part. There was some testimony relating to other issues; but, aside from what is shown above, there was nothing to indicate that the defendant knew or should have known of any defect in the brakes; nor was there any proof that hydraulic brakes, either when the liquid is low or otherwise, were likely to cause a wheel to lock or to produce any other such result as occasioned the plaintiffs' injuries.

Seemingly, it should take no argument to demonstrate that the above evidence absolutely failed to sustain the allegations of negligence. The one and only defect suggested in the petition was that the brakes were in such condition as to cause the wheel to lock, and the sole negligence charged was that the defendant knew of this fact and failed to advise the plaintiffs concerning it; whereas the evidence in regard to these matters was that the defendant had never "had any trouble by unusual clamping of the brakes or anything of that kind," and the only defect of which he had knowledge was the leaking of the fluid, which, "instead of having the effect of locking the wheel, . . had the opposite effect." The

plaintiffs were not injured because of any action of the car due to a leaking of the fluid; and, thus, if the defendant was negligent in failing to notify them of this defect, such negligence was not the proximate cause of their injuries, and afforded no ground of recovery. The defendant's knowledge of the one defect did not include knowledge of another and distinct defect from which the injuries resulted. The plaintiffs did not charge that the defendant *ought to have known* of the defect which caused the wheel to lock (see, in this connection, *Fulton Ice Co.* v. *Pece,* 29 *Ga. App.* 507 (2a) (116 S. E. 57), but alleged, in effect, that he actually knew of it; and even if it could be said that the allegations would be sustained by evidence merely that the defendant should have known of such condition, there was still a failure to sustain the allegations by proof. Not one circumstance was shown which could have served to put the defendant upon notice or inquiry as to such a defect, or from which it could have been inferred that he might have discovered it by the exercise of ordinary care. Cf. *King Hdw. Co.* v. *Ennis,* 39 *Ga. App.* 355, 360 (147 S. E. 119). The mere fact that he had learned of a defect in the particular appliance could not affect him with notice that another defect of an entirely different kind and tending to produce only an absolutely opposite result may have existed in the same appliance. Negligence, if any, as proved by the evidence was not the negligence alleged in the petition, and neither was it shown to be the proximate cause of the plaintiffs' injuries. Civil Code (1910), § 4530; *Ayers* v. *L. & N. R. Co.,* 5 *Ga. App.* 454 (63 S. E. 530); *Shaw* v. *Macon,* 6 *Ga. App.* 306 (64 S. E. 1102); *Gillespie* v. *Andrews,* 27 *Ga. App.* 509 (108 S. E. 906); *Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847 (31 S. E. 443); 1 Shearman & Redfield on Negligence (6th ed.), § 25; 45 C. J. 651-60.

If the defendant should have foreseen that some injury would likely result from a defect of which he had knowledge, or of which he should have known, it is not essential to liability that he should have anticipated the particular injury which did in fact result. *Western & Atlantic R. Co.* v. *Bryant,* 123 *Ga.* 77 (51 S. E. 20). But the rule just stated can have no application where the injury is due, not to a defect of which the defendant knew or should have known, but to a separate and distinct defect of which the defendant was wholly ignorant and of which, so far as appears, he could not

have known by the exercise of ordinary care. *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680 (62 S. E. 127). If it had appeared that by an examination or remedying of the defect which caused the leaking of the fluid a reasonably careful person would have discovered the defect which caused the wheel to lock, then the known defect might, perhaps, have been a sufficient circumstance to put the owner upon notice of the other defect which operated to produce the accident and to bring about the injuries to the plaintiffs. *Slack* v. *Harris,* 111 *Ga.* 149 (36 S. E. 615); *Godard* v. *Peavy,* 32 *Ga. App.* 121 (2) (122 S. E. 634). However, the evidence wholly failed to raise any such issue, and the burden was upon the plaintiffs to make proof of such facts as would show negligence upon the part of the defendant.

But it is said for the plaintiffs that the law requires that "every motor-vehicle, . . while in use or operation upon the streets or highways of this State, shall at all times be provided and equipped with efficient and serviceable brakes." Ga. L. 1927, p. 234. Whether the duty of equipping cars with efficient and serviceable brakes should be held to be absolute within the scope of this statute (*Monahan* v. *National Realty Co.,* supra; *Western & Atlantic Railroad* v. *Meisler,* 37 *Ga. App.* 570 (2) (140 S. E. 905)), we do not think any such duty was involved in this case. The intent of the statute was to require brakes with which a driver may reasonably retard or arrest the motion of the vehicle at will, this being the ordinary function of brakes as the term is generally understood; whereas, according to the plaintiffs' allegations and contentions in the instant case, the brakes were such as caused the car, regardless of the will or action of the driver, to stop or swerve when it should have kept running; and such a defect is not one which falls within the purview of the statute. In other words, the sense of the statute was to prohibit defects relating to the use which brakes are ordinarily intended to serve, and not to charge an owner *as a matter of law* with defects which in no way interfered with such use, but resulted in some other improper performance of the vehicle. According to the reasonable interpretation, these were not in contemplation by the lawmaking body in the passage of this statute. We think therefore that the present case must be determined without reference to the statute in regard to brakes, and that the questions of negligence and diligence should

be determined according to the general rules upon these subjects.

It follows that each of the verdicts was contrary to the evidence or without evidence to support it, and that the court should have granted each motion for a new trial upon the general grounds. In view of this ruling it is unnecessary to pass upon other contentions of the defendant, or plaintiff in error; but we may say that the motion made in each case before verdict to dismiss the case, because under the pleadings and the evidence the plaintiff was not entitled to recover, was properly overruled, since the motion included an attack upon the petition as well as the evidence; whereas there was no failure to allege a cause of action, but the trouble was that the allegations were unsupported by the evidence. *Rountree* v. *Seaboard Air-Line Ry. Co.,* 31 *Ga. App.* 231 (120 S. E. 654); *Hughes* v. *Weekley Elevator Co.,* 37 *Ga. App.* 130 (2) (138 S. E. 633).

Certain excerpts from the court's charge were excepted to upon the ground that they expressed opinions as to what had been proved. If these excerpts were subject to the criticisms lodged against them, proper corrections will doubtless be made by the trial judge should he again have occasion to instruct the jury in these cases. The other special grounds of the motion are controlled by the rulings made above.

*Judgments reversed. Jenkins, P. J., and Stephens, J., concur.*