## 581, 632. SOUTHERN RAILWAY COMPANY *v.* DISEKER, administratrix; and *vice versa*.

1. The trial judge did not err in stating the contentions of the defendant.
2. The courts of this State will, by comity, enforce rights asserted under the laws of a sister State, where such laws are not in conflict with the public policy of this State. The presumption that the common law is of force in a sister State (which prevails of necessity in the absence of knowledge of the foreign law) is not to be indulged when the court can easily inform itself that the contrary is true.
3. It is the duty of a court, when the application of the law of a sister State is invoked, and when accurate knowledge of the foreign law can in any proper manner be acquired, to inform itself as to the law involved.
(*a*) Where an action is based upon the law of another State, the rights of the parties will be determined by the lex loci, and the remedy or mode of procedure will be applied in accordance with the lex fori.
4. Under the constitution of South Carolina, an employee of a railroad company has the same rights and remedies for an injury, due to the negligence of a superior who controls and directs his actions, as if he were not an employee; and a conductor is not a fellow servant with a fireman who is a member of his train crew and subject to his orders.
5. A master's duty of furnishing his servant a safe place in which to work is a continuing one. The master owes the duty of providing a reasonably safe place, and of maintaining it in a reasonably safe condition during the employment; and the duty of a railroad company to see that objects, whether movable or stationary, are not left so near to its tracks as to injure an employee is included in the general duty of providing and maintaining a safe place to work. It is negligence to place a car on a track in dangerous proximity to another track.
6. In order to relieve a master from liability for an injury to one of his servants, the negligence of a fellow servant must have been the *sole* cause of the injury, unmixed with any negligence on the part of the master or his representative.
7. Under the laws of South Carolina, "whatever damages the jury may think are compensation to the parties for whose benefit the action is brought for the injury, whether arising from pecuniary loss or otherwise sustained by the parties, by reason of the death of their relative," are recoverable. As the jury in this case had the right to award such damages as they thought proportionate to the injury, resulting from the death of the plaintiff's husband, which might include injury over and above any legal claims, the defendant was not hurt by the instruction upon the subject of the earning capacity of the deceased and his expectancy, this being merely one item of damage that might be considered by the jury.
8. The rule that the pendency of a prior suit in another State will not abate a suit between the same parties for the same cause of action applies where such suit is in the name of the administrator of the same decedent and against the same defendant, although the administrators in the two States are different persons, but a valid judgment in either

State will afford protection against the enforcement of the claim in the other.

9. The evidence and the law authorized the verdict.

Action for damages; from city court of Richmond county— Judge William F. Eve. May 30, 1907.

*Joseph B. & Bryan Cumming,* for plaintiff in error.

*Austin Branch, A. L. Franklin,* contra.

Russell, J. Mrs. Eula Diseker, as administratrix of William H. Diseker, deceased, brought an action for damages, in the city court of Richmond county, against the Southern Railway Company. The jury trying the case rendered a verdict for $7,000 in her favor. The defendant moved for a new trial, and excepts to the judgment overruling that motion. Exception was taken pendente lite to the judgment striking the 13th paragraph of the defendant's answer.

The petition alleges that it is brought pursuant to sections 2851, 2852 of the Civil Code of South Carolina (1902), which read as follows: "Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable, if death had not ensued, shall be liable for an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony." "Every such action shall be for the benefit of the wife or husband and child, or children, of the person whose death shall have been so caused; and if there be no such wife, or husband, or child, or children, then for the benefit of the parent, or parents; and if there be none such, then for the benefit of the heirs at law or the distributees of the person whose death shall have been caused as may be dependent on him for support, and shall be brought by or in the name of the executor or administrator of such person; and in every such action the jury may give such damages, including exemplary damages where such wrongful act, neglect or default was the result of recklessness, wilfulness or malice, as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought. And the amount so recovered shall be divided between

the before-mentioned parties, in such shares as they would have been entitled to if the deceased had died intestate, and the amounts recovered had been personal assets of his or her estate."

It is alleged that the plaintiff is the wife and personal representative of decedent William H. Diseker, and that he had, when he was killed, and now has, two minor children, Trudell Diseker, three years old, and Genesta Diseker, one year old; that he died intestate, and that the action is brought for the benefit of his wife and said children. It is alleged that the defendant owns and operates a line of railway from Augusta, Georgia, to Charleston, South Carolina, and has an agent and agency in Augusta, Georgia, and owns and operates a railroad yard, track, cars, and engines in Charleston, South Carolina. In the 10th paragraph of the petition it is alleged that Diseker was employed by the defendant as a fireman on a switch-engine in the defendant's yard in Charleston, South Carolina, and was working in that capacity on the 6th of September, 1906, when he was killed by the defendant. The 11th paragraph alleges that it was the duty of William H. Diseker, as a fireman on a switch-engine, to look out for signals from the train-hands employed by the defendant. Paragraph 12 avers that on the 6th of September, 1906, in the defendant's yard and on its switch-engine, Diseker was looking out of the engine-cab for signals, when a box-car, left by the defendant on an adjoining track, struck him on the head and killed him. In the 13th, 14th, 15th, and 16th paragraphs it is alleged: (13) that the box-car which struck and killed the said William H. Diseker was not pushed beyond the clear-post by defendant and its agents; (14) that said box-car was within a half foot of the window out of which said Diseker was looking for signals; (15) that the defendant was negligent in not removing beyond the clear-post the said box-car; (16) that defendant was negligent in leaving said box-car within a half foot of the window of the cab out of which said Diseker was looking when he was killed. The petition further alleges that Diseker was thirty years of age and making $60 a month when he was killed, and was free from fault at the time of the killing, and that the administratrix, wife and children have been damaged, by the death of Diseker and by the negligence of the defendant, in the sum of $15,000.

The defendant in its answer denies that the plaintiff is the per-

sonal representative of William H. Diseker, and that the plaintiff is his duly qualified administratrix. The 3rd and 4th paragraphs of the petition, which base the action upon the laws of South Carolina, are not answered or denied. The 7th, 11th, 12th, 13th, and 14th paragraphs are not answered, and consequently must be taken to be admitted without proof. The 15th, 16th, 18th, and 19th paragraphs are denied. In the 10th paragraph of its answer the defendant pleads as follows: "For further plea and answer this defendant shows that at the time of the death of the said William H. Diseker he was fully informed of the exact position of the car against which his head struck, and was fully informed as to the dangerous position of the car, and it was his duty at the time of the happening of the accident to be observing the car, to see if it was sufficiently far removed from the passing engine to permit the engine to pass with safety; and, despite his special knowledge and his special duty at the time of the happening of the accident, he negligently failed to avoid being struck by the car which was on the adjoining track to the passing locomotive." For additional answer the defendant company pleads, in the 11th and 12th paragraphs, that the court of ordinary of Richmond county was without jurisdiction to appoint the plaintiff administratrix of the deceased, and that the defendant has filed a petition to vacate the judgment appointing her temporary administratrix. These paragraphs were stricken by the court, but to this no exception was taken. The 13th paragraph of the answer, to the striking of which exception was taken pendente lite, set up the pendency of another suit upon the same cause of action in the State of South Carolina, in that "prior to the appointment of Eula Diseker as temporary administratrix as aforesaid, James H. Diseker Sr., a resident of Richland county, South Carolina, had been appointed administrator of the estate of William H. Diseker, and had already filed suit against this defendant to recover the value of the life of the deceased."

At least six of the assignments of error are, if sustained, of controlling importance: (1) That the charge of the court erroneously stated the contention of the defendant. (2) That the court declined to instruct the jury that the death of the deceased was due to the act of a fellow servant, but, on the contrary, submitted that issue to the jury. (3) That the court charged that if the act com-

plained of was directed by one who was in charge of the servants of the company, it would be the act of the master. (4) That the court refused a written request to charge the jury as follows: "The question whether Diseker, plaintiff's husband, the engineer, the switchman, Turner, Antibus, and Cahill, were fellow servants is a question of law, to be decided by the court; and I charge you that all the persons engaged in the operation involved in this case are what the law designates as fellow servants." (5) That the court erred in the charge to the jury as to the measure of damages. (6) That the court erred in striking the defendant's plea in abatement. Of the additional exceptions presented to our consideration, assigning error upon excerpts from the charge of the court, some are without merit when viewed in connection with the context; and in others the error, if any exists, is due to mere verbal inaccuracy which was clearly harmless, the legal principles stated being sound and appropriate in the cause.

In the motion for a new trial it is alleged that the court erred in charging the jury as follows: "The defendant company denies that they were guilty of negligence and that he was killed by the negligence of his coemployees." The error assigned is that this "erroneously stated the contention of the defendant; for the defendant, by its pleadings, evidence, and argument, denied that either it or any of its employees were negligent." It is reversible error to misstate the contentions of a party, but we see no merit in this exception; for it is clear to us, and we think it must have been equally clear to the jury listening to the charge, that the latter portion of the extract complained of relates back to the word "denies," as completely as to the statement "that they were guilty of negligence." Besides, it is perfectly clear from the court's frequent repetition, in other portions of the charge, of the defendant's contention that the death of the decedent was due wholly to his own negligence, that in this part of the charge the court was telling the jury that the defendant denied that the death of the plaintiff's husband was due either to its own negligence or to that of any of its employees.

The main complaint of the defendant, presented in different forms in several grounds of the motion for a new trial (and the most grievous error committed by the court, if error was committed), was that the court refused to treat the conductor of the

defendant's train as a fellow servant of the deceased. Primarily, the issues in the case may be said to hinge right here. If the conductor was a fellow servant, then the plaintiff would not be entitled to recover. If, as a matter of law, he was not a fellow servant, or the jury had the right to find that he was not a fellow servant as to the occupation in which the train crew was engaged, then the verdict for the plaintiff may be authorized. We think the charge of the court upon this subject not only affords the defendant no ground for complaint, but was really more favorable than the defendant had a right to expect. It must be remembered that this case was proceeding as an action for an injury which occurred in the State of South Carolina, and that the plaintiff based her right upon the provisions of sections 2851 and 2852 of the Civil Code of that State. The court was sitting pro hac vice as a court of the State of South Carolina, and was charged by comity with the administration of the laws of that State, in so far as those laws were not repugnant to the public policy of this State. No presumption could arise that the common law prevailed in South Carolina, if there was any way in which the court could have informed himself as to what the law of South Carolina really was, or if the court, as a matter of fact, knew the law of South Carolina upon the subjects involved. *Missouri Insurance Co.* v. *Lovelace,* 1 *Ga. App.* 446 (58 S. E. 93), and citations. If the court either knew the law or had any way of informing itself as to the law of South Carolina, and correctly decided the issues involved in this case according to that law, there is no error of which the defendant can be heard to complain. *Herschfeld* v. *Dexel,* 12 *Ga.* 582. The defendant can not complain that the South Carolina law was administered, for the casualty happened there, and it was entitled to plead any defenses available under that law. On the other hand, matters which would afford no defense had the case been tried in South Carolina would be worthless as a defense in this case. It would have been ridiculous for the trial court to assume that the common law prevailed in South Carolina upon the issues here presented, or for this court so to presume, when, by the exercise of a very slight degree of diligence, either court could inform itself that the contrary was true.

Article 9, section 15, of the constitution of South Carolina (1895), so far as is now material, is in these words: "Every em-

ployee of any railroad corporation shall have the same rights and remedies for any injury suffered by him from acts or omissions of said corporations or its employees as are allowed by law to other persons not employees, when the injury results from the negligence of a superior agent or officer, or of a person having a right to control or direct the services of a party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about a different piece of work," etc. Under this section of the constitution of South Carolina, which has not been amended since that time except to include employees of street-railways, two questions were necessarily presented. Was Diseker the cause of his own injury, or was he under the orders of the conductor; or, in other words, was Diseker's death due to the negligence of the conductor, or to his own negligence? It is a question of fact, under the constitution of South Carolina, whether one engaged in the same work with another, under the same employer, is a fellow servant, or is a vice-principal or the alter ego of the master. It was, therefore, not erroneous for the court to refuse to charge, as requested by the defendant's counsel, that Diseker and the conductor were, as a matter of law, fellow servants. It was undisputed, in the evidence, that the conductor had the right to direct and control Diseker's movements; and clearly, for that reason, Diseker was not, under the South Carolina law, a fellow servant of the conductor, no matter whether the conductor was, strictly speaking, a vice-principal of the company or not. Under the constitutional provisions of the State of South Carolina and the evidence in this case, the plaintiff was entitled to recover, if her husband was killed by reason of the negligence of the conductor. In fact, the Supreme Court of South Carolina has frequently ruled upon the point here involved, and has several times held that a conductor is not a fellow servant of a fireman, though the fireman be a member of the train crew of the train of which he is conductor. Coleman *v.* Wilmington &c. R. Co., 25 S. C. 446 (60 Am. R. 516); Boatwright *v.* Northeastern R. Co., 25 S. C. 133; Hicks *v.* Sou. Ry. Co., 63 S. C. 559 (41 S. E. 753); Rhodes *v.* Sou. Ry. Co., 68 S. C. 494 (47 S. E. 689).

It is an interesting historical fact that perhaps the first enunciation of the non-liability of a master for injuries caused by fellow

servants, ever made in this country, was by the Supreme Court of South Carolina in Murray *v.* South Carolina Railroad Co., 1 McMul. 385 (36 Am. D. 268). The decision in this case antedates that in the Massachusetts case of Farwell *v.* Boston & W. R. Corp., 4 Met. 49 (38 Am. D. 339), an entire year, although the Massachusetts case has been cited as authority in almost every jurisdiction. We have been somewhat interested in the discussion of the question as to whether the fellow-servant doctrine is or is not of common-law origin, but decline to decide the question, because it is not material to the case, though treated at length in the briefs of opposing counsel. Certain it is, however, that the doctrine of non-liability of the master to a servant for acts of fellow servants was not expressly ruled or before the court in Priestly *v.* Fowler, 3 Mees. & W. 1, the case most generally cited to sustain it. The decision in the Priestly case would not be decisive one way or the other of the inquiry as to whether the fellow-servant doctrine was part of the common law, even if the point had been before the English court, for the decision was not rendered until 1837; unless, as argued by counsel for the plaintiff in error, it could be presumed that the doctrine had been so well settled as never to be questioned.

The doctrine of non-liability for injuries caused by a fellow servant is defensive in its nature. When the plaintiff proved that her husband was killed, and killed by the running of a train, she established a prima facie case of liability, under the laws of this State as well as under the constitution of South Carolina, which declares that every employee in a railroad corporation shall have the same rights and remedies for an injury as are allowed to persons not employed. Under our law the employee would be compelled to show that he was faultless, but under the South Carolina law he carries no such burden. The plaintiff having made a prima facie case, it devolved upon the defendant to set up any South Carolina law (if such there was) which would defeat a recovery, or to show that the death of the deceased was not due to its negligence. The record shows that, as to the South Carolina law, the defendant preferred to rely upon a presumption which is unsupported in fact and in law; and the evidence, in our judgment, disclosed enough to authorize the jury to conclude that the defendant was negligent.

The next point in the case is raised by the insistence of the plaintiff in error that the placing of the car as it was placed was not a violation of the duty of the master to provide a safe place to work. We can not agree with this contention. It is true that the servant is required to take notice of the location of movable objects in the place where he is put to work, and generally the master is liable only for dangerous objects or situations of which he has knowledge which are permanent. The requirement that the master shall provide a safe place to work has reference to the place in its usual and ordinary condition generally; but a servant is not debarred of recovery if he is injured by a temporary situation, if his danger and injury are caused by the master or by one who stands in the place of the master. In the instant case Diseker, acting under the orders of the conductor, could not control the placing of the car at the switch, which caused the loss of his life. We come then to the question whether he caused the injury to himself by his own negligence. It may be said that he would not have been injured had he not looked out of the cab window, and if he had borne in mind the location of the car. As was held in the case of *King* v. *Seaboard Air-Line Railway*, 1 *Ga. App.* 88 (58 S. E. 252), knowledge of an existing danger by an employee who is injured while engaged in his employment will not defeat recovery, where it appears that his disregard of his own safety was induced by his absorption in the discharge of his duties, in the interest of the master, to the extent that he was not able at the moment to realize the situation. We think the evidence in this case would authorize the jury to draw the inference that if Diseker was negligent in any respect or reckless of his own safety, it was due to the fact that his mind was fully engaged with the duties before him, and that his very loyalty rendered him oblivious of the danger which the master, through its conductor, had created. Consequently, the verdict should not have been set aside upon that ground.

We have discussed at some length what we consider the salient points in this case, but, in view of the zeal with which the contentions of the learned counsel for the plaintiff in error have been pressed in the brief, it is perhaps proper briefly to discuss each of them seriatim. It is contended that the verdict is contrary to evidence and without evidence to support it, because there was no negligence of any person or agent or employee of the railroad company.

The evidence disclosed, without dispute, that the night on which the plaintiff's husband. lost his life was very dark. For some reason the train crew with which he worked was one man short. For some reason there was no clear-post where the switch entered the main line. For some reason the conductor who was in charge of the shifting had not measured with his arm, as he said he ordinarily did, the distance between the car, which had been placed upon the side-track, and the main track, over which the engine was to pass. Each of these facts might be considered by the jury as negligence, or as circumstances for which the defendant was responsible, which could and ought to have been prevented, especially in view of the darkness of the night. It is admitted in the pleadings that the car was left on the side-track within six inches of the main track. Can it be insisted that this was not an act of negligence, especially in view of the fact that the evidence discloses that the engine was unusually large, and therefore required unusual clearance room? The plaintiff's husband was not responsible for the placing of the car, and if he stayed upon his engine, where his duties called him and where he belonged, he could not know, or have an opportunity equal to that of the conductor for knowing, the exact distance that separated the car upon the switch-track from the track over which the engine must pass; for the conductor was upon the ground.

We think it unquestionable that the act of placing the car in such close proximity to the main track was an act of negligence. The failure to have a clear-post might itself be considered negligence, and certainly, in the absence of a clear-post, the jury was authorized to find that it was negligence on the part of the conductor not to have measured the distance and ascertained absolutely that there was sufficient clearance room. There can be no doubt that the jury were authorized to find that the defendant was negligent in failing to provide a safe place for the plaintiff's husband to work, unless the defendant should be relieved from liability by reason of the fact that the dangerous condition which was created in the defendant's shifting-yard was the act of fellow servants, and unless the knowledge of the plaintiff's husband was equal to that of the defendant or its vice-principal. To constitute one a vice-principal, he must of necessity be one who is, by authority of the master, discharging one of the non-delegable, unassignable duties of the master. The defendant admits, by not

denying the allegations of the plaintiff's petition, that the car was placed within six inches of the other track *by the defendant;* so it would seem to be unnecessary to determine whether the conductor in fact was authorized by the master to place the car where he did, or was acting for the master when he did place it there. If he did place it in a dangerous position, and, by so placing it, rendered dangerous the defendant's yard, where the plaintiff's husband was at work, and which the defendant was bound to continuously keep in a safe condition as a place of work, then the defendant was liable, unless, knowing of this dangerous condition, the deceased could, by the exercise of ordinary care and diligence, have avoided injury to himself. There is no evidence that the plaintiff's husband knew the distance that the car had been placed from the track. The conductor testified that he told the engineer that it was very close. There is no evidence that this was said in such a tone of voice that the fireman on the other side of the engine could hear it. His work may have been so engrossing that he did not hear it. There is no evidence that the engineer communicated to his fireman—the plaintiff's husband—the information he had received from the conductor. If he did not hear what the conductor said to the engineer, the evidence shows not only that he did not know that the car was in dangerous proximity to his engine, but that he would have had the right to presume that the conductor, the vice-principal of the defendant, in performing the duty of providing a safe place to work, had placed the car at a distance where he was in no danger.

We think the foregoing reference to the evidence in the record fully answers the second contention of counsel for the plaintiff in error, that the verdict was without evidence to support it "because the deceased was fully aware of the condition which brought about his death, and assumed the risk, and it was either his own negligence or error of judgment that was the immediate cause of the catastrophe." Mere proximity as to time does not always determine proximate cause. We think that the jury had the right to find that the proximate cause of Diseker's death was the placing of the car upon the side-track in such dangerous proximity to the adjoining track that the fireman could not perform his duties without peril. The jury could come to no other conclusion from the evidence but that if the car had not been placed where it was Diseker would not

have been killed, even though the conclusion is also possible that he might not have been injured with the car in the position in which it was placed.

The real questions, therefore, are: (1) Was Diseker at the time of his death performing the duties he was required to fulfil? (2) Did he know of the dangerous proximity of the car? Or (3) even if he knew of it, did any emergency arise which would authorize the jury to infer an excusable forgetfulness of his own safety, on account of his faithful and zealous attention to the service of his master? We think the evidence authorized the jury to answer the first question in the affirmative, the second in the negative, and that the third question must be answered in the affirmative, even if in any view of the evidence an affirmative answer to the second question is authorized.

The third reason assigned why the verdict was contrary to evidence and without evidence to support it was that "the placing of the car in the position it was in at the time of the accident and the moving engine passed it was the act of the switch-engine crew with which Diseker was working, and, (*a*) as it will be presumed that the common-law rule of master and servant is in force in South Carolina, and (*b*) under the common-law rule the master is not liable to his servant for the negligence of a fellow servant, and (*c*) as the members of this switch-engine crew were fellow servants, the defendant railroad would not be liable." As we have already ruled, there is no presumption that the common-law rule of master and servant prevails in South Carolina. To indulge such a presumption would be to assume a condition at total variance with the fact.

The case of *Hovis* v. *R. & D. R. Co.*, 91 *Ga.* 36 (16 S. E. 211), is cited. At the time that case was decided the Supreme Court properly held that, it appearing that the negligence complained of was that of a fellow servant, a demurrer to the petition was properly sustained, "the case being brought under the law of South Carolina, where the common-law rule prevails as to the liability of a master for injuries caused to his servant by the negligence of a fellow servant." The opinion in the *Hovis* case was delivered in 1892, and at that time, as stated by the Supreme Court, the common-law rule prevailed. The court did not state that there was a presumption that it prevailed. It stated a fact as a fact. But, as

already said, this was changed by the constitution of 1895, and it can not now be stated as a fact that the common-law rule prevails; and therefore, the decision in the *Hovis* case has no bearing upon this case. No presumption was to be indulged either way by the lower court. If a plaintiff or a defendant relies especially upon the law of another State, it is incumbent on the party relying upon it to plead and prove it. If the law of another jurisdiction is neither pleaded nor proved, it seems to me that the law of the forum should be administered. Where there is no demurrer to the pleadings nor objection to the proof, and the court, being informed of or knowing the law of the foreign jurisdiction, administers it correctly, the judgment will not be reversed.

In this case, as we view it, it was the very gist of the defendant's defense to show, if it could, that by the laws of South Carolina the master is not liable to an employee for the negligence of his fellow servants. If the case had been tried under the laws of Georgia, that defense would not have been available, the fellow-servant rule having been abrogated by sections 2297, 2323 of the Civil Code of 1895 [Code of 1910, §§ 2751, 2782]. The non-liability of the master on account of the fellow-servant rule was, so far as this case is concerned, purely defensive, and should have been pleaded and proved by the defendant. Whether the Georgia law or the South Carolina law be applied to the facts, the plaintiff was entitled to recover, if it was shown that the death of her husband was caused by the negligence of a coemployee, and the deceased was himself free from fault. We think the evidence clearly establishes the negligence of the defendant. In what respect was the deceased at fault? What evidence is there that he was not blameless? He was at his post of duty. He was performing his duty. According to the testimony, it was not only his duty to look forward and backward for signals, but the performance of his duty of looking forward was absolutely necessary at that time. Furthermore, he had just been told by his superior, whose orders he was bound to obey, to look out, and, according to the testimony at Antibus, the rules of the company authorized his looking out of the window just as he did. But it is replied that, knowing the danger, he was not obliged to look out; that the risk was so hazardous that he was not required to assume it.

After careful study and frequent rereading of the testimony, we

can find nothing but an inference upon which the statement that Diseker knew the dangerous proximity of the car can be based. The jury had a better right to infer, from the circumstances, that he did not know that the car was as close as it was; for he had the right to presume that the conductor had placed it at a safe distance. But whether he knew or did not know the exact distance, there can be no doubt that everything occurred in a twinkling, during the time that it took the engine to go ten or twelve feet. A signal was made up the track; the engineer told the fireman to look out of the window; it was his duty to look out of the window and tell the engineer what signals he saw. Just as he looked out, perhaps before he looked out (no one can tell), an unusual crash was heard from the rear, and the engineer reversed his engine. The fireman's duty was to report from the rear as well as in front. The crash came before his injury. Everything that occurred was nearly contemporaneous. We will not say that the jury were not authorized to find that the deceased was without fault, even if he knew the exact location of the car, in that his forgetfulness of his own safety might be excused because it was caused by his absorption in the duties with which he was charged and in which he was engaged. *King* case, supra. Apparent negligence on the part of a servant as to his own safety may be cancelled by his greater diligence in the employer's service what caused his negligence as to himself. If the accident had taken place in the daytime, or if the place had been thoroughly lit, the case, on this point, might be different, because an employee assumes not only all risks from causes known to him, but also such as are readily discernable; but the evidence is undisputed that darkness pervaded the yard, except where there were lanterns in the hands of the brakemen and the conductor.

It is complained in the motion for a new trial that the court did not instruct the jury as to what is an unassignable duty, and that the jury were left, as it were, at sea, to ascertain and apply the meaning of unassignable duties. We do not think this exception well taken. The court did not generalize upon the subject of unassignable duties or attempt an abstract definition, but the jury were not left at sea. The court performed its duty in this respect by properly applying the law to the evidence and the plead-

ings. In one place in the charge the court said: "If a superior
is engaged in doing detailed work along with other employees, then,
to that extent, he would be a fellow servant, but if he was in charge
of other employees, who received his orders and directions, and was
in discharge of duties of the master which were unassignable or
which could not be delegated to others,—such as furnishing safe
machinery or a safe place for employees to work,—then he would
not be a fellow servant with the subordinates or those who were to
perform the work." The subject is referred to again by the court
in a manner from which, we think, the jury could have under-
stood the nature of the only unassignable duty involved in this
case. It must be remembered that the only negligence charged
against the defendant was the failure to provide a safe place to
work, due to the placing of the car by the defendant in a dangerous
position. It was not necessary for the jury to be instructed as to
unassignable duties which might be involved in other cases. The
court was only required to instruct them as to the specific non-
delegable duty, a breach of which was alleged and denied, in the
case then before the court. Upon this subject the court charged
the jury as follows: "The master owes the servant a positive per-
sonal duty to provide and maintain a safe place for the servant to
work; and if, through the negligence of the master in this respect,
the servant is injured, he is entitled to recover. This duty to
provide a safe place to work is a positive one, and can not be as-
signed by the master so as to escape liability. A servant to whom
has been delegated by the master the duty of providing the other
servants a safe place to work is engaged in a duty which is per-
sonal to the master; he is not a fellow servant, but a vice-principal,
for whose negligent conduct the master is responsible." We con-
sider this charge sound law, and it defines the only unassignable
duty with which the jury were concerned.

We can not see that the instruction upon which error is assigned
in the 5th ground of the amended motion for a new trial affords
any ground of complaint to the plaintiff in error. The court
charged: "If it was done by one of the fellow servants who was
charged with the carrying out of the act, then it would be the
act of a fellow servant, and the master would not be liable, unless
the master, by his vice-principal, had knowledge of its existence
and permitted it to remain. If he did, then the master would be

liable; or if it was permitted to remain long enough for the master, by the exercise of ordinary care and diligence, to have ascertained it and prevented it, then he would be liable." If, as contended in the assignment of error, "there was no evidence as to knowledge of the master, through any vice-principal, of the existence of the conditions complained of," and if the evidence showed that the length of time the condition existed was very short, then, if the charge is incorrect, the error was in favor of the plaintiff in error, instead of to its prejudice.

If there was error in the charge complained of in the 6th ground of the amended motion for a new trial, it was likewise error against the plaintiff, and not against the defendant, because the court prefaced the instruction complained of by the statement that the common law governed in this case, and that one servant, could not recover damages sustained by the negligence of a fellow servant; which, as we have stated before, is not a correct statement of the law, either of Georgia or of South Carolina, though in line with the contention of the plaintiff in error.

In the 7th and 11th grounds of the amended motion for a new trial, it is contended there was no evidence to warrant a charge upon the subject of a safe place in which to work. It was admitted in the pleadings that the car was placed within six inches of the adjoining track, and, upon this admission on the defendant's part, it was for the jury to determine whether the yards were or were not a safe place in which to carry on the kind of work in which the deceased was engaged. The plaintiff alleged that the defendant placed the car there, and this allegation of the petition was not denied.

The 9th ground of the amended motion has already been discussed, in what we have said upon the subject of the employee's absorption in the performance of his duty to the master. Our decision on this point is controlled by the ruling of this court in *King* v. *Seaboard Air-Line Railway,* supra, and authorities therein cited. The court charged in the case at bar that "a servant may recover from his master for an injury occasioned by a dangerous instrumentality negligently maintained by the master, although the servant was not ignorant of the existence of such dangerous instrumentality, if it is shown that at the time of the injury the servant was rendered oblivious, or otherwise incapable of exercising

his information as to the existence of the dangerous thing, on account of the engrossing character of the work at hand, or other excusable reasons brought about by proper attention to duty, and not by his own carelessness." This instruction is made the subject of vigorous attack in the exhaustive brief of the learned counsel for the plaintiff in error. In the first place, it is contended that there is no evidence to authorize the instruction. Of course, if this were true, the instruction would be improper, without regard to its soundness as a legal proposition. It is insisted that there was no evidence of the existence or maintenance of any dangerous instrumentality. Perhaps the word "instrumentality" is not the most appropriate word which could have been applied by the court, in referring to the conditions which existed in the defendant's yard at the time the plaintiff's husband was killed, if the testimony in behalf of the plaintiff was believed by the jury; but we have no doubt that the jury did not misapprehend the meaning which the court sought to convey and that the language complained of was understood by them to be directed to the inquiry as to whether the absence of a clear-post, the position in which the still car was placed upon the track adjoining that over which the engine was moving, and other circumstances to which we have referred, rendered the place of work, for the time being at least, unsafe. Where the question of a safe place to work is involved, the jury are in every case the judges of whether the place in question was safe or unsafe; and though a place may be only temporarily unsafe, and ordinarily may be safe, and though the hazard of the location may be due to the concurrent ephemeral negligence of more than one of the employer's servants (provided they be not fellow servants), the injury of a servant who is injured by the combined influence or effect of the acts which have rendered unsafe for the time being a place ordinarily safe can well be said to be due to the failure of the master to discharge the non-delegable duty of providing a safe place to work. We think that in the present case the concurrence and united effect of the negligence of the defendant in failing to place a clear-post and in placing a car on one track within six inches of the clearance of the adjoining track used for switching, and the neglect to provide proper lights, either singly or altogether, could properly be found by the jury to have rendered the place of work of the plaintiff's husband unsafe. Whether the evidence au-

thorized the jury to find the place of work of the deceased was unsafe or not, the instruction of the trial judge was not erroneous, under the ruling in the *King* case, supra; and we think that the ruling is supported by reason as well as by authority.

There are two principles of law in which knowledge of danger is a salient feature: (1) The doctrine of contributory negligence, which forbids a recovery where the plaintiff knows or should know of the danger and fails to use reasonable care to avoid it, and (2) the maxim embodied in substance in section 2322 of the Civil Code of 1895 [Code of 1910, § 2781]—volenti non fit injuria—which requires the plaintiff to refrain from exposing himself to a known danger, and thus consenting to his own injury. Under the provisions of section 3830 of the Civil Code of 1895 [Code of 1910, § 4426] the knowledge of the plaintiff imposes upon him the duty of active avoidance, and penalizes his non-action or negligent inactivity; and under section 2322 [Code of 1910, § 2781] the knowledge of the plaintiff imposes upon him the duty of refraining from voluntarily exposing himself to danger of which he is cognizant, and penalizes rashness or careless activity. *Macon &c. Railroad Co.* v. *Anderson,* 121 *Ga.* 666 (49 S. E. 791). In neither case however, is the knowledge of the danger conclusive of the plaintiff's right to recover. In either event it only imposes a duty,—in the first case to use care to protect himself, in the second to use discretion not to expose himself to a danger so great that a prudent man would refuse to encounter it. A servant will be allowed to recover in any case where he measures up to the full responsibility imposed by his knowledge; for it is quite apparent that section 2612 of the Civil Code of 1895 [Code of 1910, § 3131], which provides that it must appear that the servant did not know nor have equal means of discovering the imminence of danger, is not exhaustive of the fundamental principles of law on this subject. *Southern States Portland Cement Co.* v. *Helms,* 2 *Ga. App.* 309 (58 S. E. 524). Construing the provisions of this section with the whole law on the subject, it is plain that mere knowledge of danger is not equivalent to contributory negligence; and if the servant uses all reasonable care to protect himself after knowledge of danger is brought home to him, his right to recover is not defeated. In order to complete the defense of contributory negligence, not only must it be shown that the person injured had

knowledge of the danger, but it must also be made to appear that he failed to use reasonable care to avoid it; and the presumption of consent to an injury, which might arise from knowledge of the danger, may be rebutted by the compulsion of the service.

The writer concurs in the view of counsel for the defendant in error that the duty of the master is protection and direction, and the duty of the servant is obedience and performance, but the duty of the master is paramount. The servant is paid to work, and not to watch, and the master's duty to protect the servant is higher and more strictly to be enforced than the servant's duty to protect himself. From this fundamental duty of the master arises the principle of law and of sound public policy that the servant may, in obedience to direct and specific command, or in response to the no less imperative obligation of faithful, efficient, and eager performance of his work, incur a large degree of danger without shifting the primary responsibility for his safety from the master to himself, and hence may recover for an injury received while in the performance of his duty, unless obedience to the command is so obviously and imminently fraught with peril, or unless his performance of the work is so reckless and so rash, that a reasonably prudent man would act differently. Union Pacific Railway Co. *v.* Jarvi, 3 C. C. A. 433, 437 (53 Fed. 65); Labatt, Master & Servant, §§ 322, 323; Lloyd *v.* Hanes, 126 N..C. 359 (35 S. E. 611); Stephens *v.* Hannibal &c. Railroad Co., 96 Mo. 207 (9 S. W. 589, 9 Am. St. R. 336); *Western & Atlantic R. Co.* v. *Bryant,* 123 *Ga.* 77 (51 S. E. 20). The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is injured through the neglect of the master, it is but meet that he should be recompensed. Labatt, Master & Servant, § 440; Patterson *v.* Railroad Co., 76 Pa. 389 (18 Am. R. 412); Indiana Car Co. *v.* Parker, 100 Ind. 181. The theoretical right of a servant to throw up his hands and quit his work because some extra hazard appears, and he is exposed to a risk which it is questionable whether he assumed at the time the contract was made, is one whose exercise is practically and humanly speaking impossible. It would require an immediate and accurate determination of the vexed question of what risks were assumed, and ofttimes would exact of an unlettered laborer an instantaneous solution of abstruse legal problems which

have perplexed the highest legal tribunals. Sound public policy encourages, just as the success of the master's enterprise requires, an ardent and zealous, and not a timid or halting, performance. The whole fabric of progress is dependent upon getting the work done. Industry abhors and the law should discountenance a disobedient, awkward, or lazy servant. Courage to do the work, rather than care to avoid its danger, is what the public welfare requires. "The outworn doctrine that labor is mobile and that each laborer has and should exercise his broad philosophical right to stop work has been borrowed by some courts from the vagaries of laissez faire economists and used to defeat the servant's right to recover for injuries. The practical enforcement of such impractical theories would result in the complete destruction of industrial progress. The demands of industry compel, just as the necessities of labor induce, stability of employment." , See also Labatt, Master & Servant, § 65.

The evidence in the present case authorized the conclusion that the deceased was exposed to a danger which would never have arisen if the master had done his duty. Granting that at that moment he would have had a legal technical right to climb down from his engine, without incurring either civil or criminal liability, he nevertheless had the right to go ahead, doing his part in the great work of transportation, and to stay there and face the danger, in order that the cars might be shifted, if in doing so he used all the reasonable care that any other man would or could have used under the circumstances; and this was a question for the jury.

What we have said in ruling upon the charge complained of in the 9th ground disposes, adversely to the contentions of the plaintiff in error, of all the assignments of error upon the instructions of the judge and his refusals to charge, except as to the measure of damages and the admissibility of the Carlisle tables of mortality; and as to these we do not deem it necessary to add anything to what is said in the 7th headnote.

*Judgment affirmed. Cross-bill of exceptions dismissed.*