## 4784.  SPENCER . v.  LAUER & HARPER COMPANY.

1. The allegations of the petition were amply sufficient to withstand a general demurrer. It was charged that the defendant was negligent in failing to provide a safe place for the servant to work; in failure of proper inspection; in failure to provide an inspector for the riveting gang of which the deceased was a member, and in retaining in its service an incompetent superintendent and an incompetent foreman, with knowledge of their incompetency. On demurrer the allegations of the petition must be assumed to be true, and the facts stated would have rendered the defendant liable if a jury should reach the conclusion that the plaintiff was injured while in the exercise of ordinary care for the preservation of his own safety, and that the casualty which resulted was due to negligence of the defendant in the respects alleged. The existence or absence of negligence being properly a jury question, it was not for the court to decide whether, under the facts stated, the negligence of the plaintiff's son preponderated over the negligence of the defendant.

2. The amendments to the petition were properly allowed.

DECIDED OCTOBER 31, 1913.

Action for damages; from city court of Savannah—Judge Davis Freeman. February 13, 1913.

*Hitch & Denmark, W. M. Toomer,* for plaintiff.

*O'Byrne, Hartridge & Wright,* for defendant.

RUSSELL, C. J.  Suit was brought for damages alleged to have been sustained by the plaintiff on account of the death of her son, W. A. Spencer, and it was alleged that his death was due to the negligence of the Lauer & Harper Company, a corporation employed as subcontractor in the construction of the steel framework of the Savannah Hotel. After the defendant had answered, the plaintiff amended her petition, and to the petition as amended the defendant demurred generally and specially. The plaintiff filed a second amendment, and to this the defendant again demurred generally and specially; and pending the argument on the second amendment the plaintiff, for the third time, amended her petition. It is only necessary to consider the merits of those special demurrers which were sustained by the court and of the general demurrer, the court having sustained only the 4th, 5th and 6th grounds of special demurrer, and then sustained the general demurrer, dismissing the suit.

The 4th ground of the defendant's second demurrer sets up that the petition fails to allege that Spencer, the deceased, did not know that the defendant had failed to provide the presence and

service of an experienced foreman of the riveters gang charged with the duty of providing a safe place upon which the said W. A. Spencer could work, especially by examining and inspecting the planks, platforms, scaffolds, and other places upon which the riveters, including the petitioner's son, were expected to work. The 5th ground of the demurrer sets up the contention that the vibrations of the steel framework, traceable to the operations of the derrick, was as well known to the deceased as to the defendant. In the 6th ground the defendant demurs upon the ground that it appears from the petition that Spencer could have known as well as the defendant that the superintendent and the assistant superintendent (whose incompetency is alleged) were in fact incompetent and unsuited to the duty imposed upon them. As to these points the petition as amended contains the following allegations of negligence: (1) In failing to provide a safe place upon which the said W. A. Spencer could work. (2) In placing a plank across beams, to be used as a platform, without causing the same to be securely fastened. (3) In failing to inspect said plank and find its unsafe position before allowing Spencer to stand thereon and to use it in pursuing his work on the day of his death. (4) In not having an inspector to precede the riveters and inspect the plank and platform upon which they were to work. (5) In permitting a plank, upon which the riveters were allowed to stand and work, to lie across beams in an unsafe position. (6) In failing to provide an adequate number of skilled agents, servants, and employees in connection with the construction of the building, and particularly in failing to have the presence and service in its employ of an experienced foreman of the riveters gang charged specially with the duty of preceding and accompanying the riveters, not alone for the purpose of superintending their work, but especially for the purpose of examining and inspecting continuously the planks, platforms, and scaffolds, their places and positions, where and upon which said riveters, including the petitioner's son, were expected and required to work,—especially in view of the method of construction of the skeleton steel framework of the building and its condition at that time, causing constant vibrations which tended to displace platforms, planking or scaffolds placed for the use and safety of employees in the construction of the building, the probable displacement of which should have been anticipated and provided against by the defendant.

Without considering the petition in detail, and without making specific reference to the amendments filed to meet those special demurrers which were overruled, it is apparent that the special demurrers which were sustained raise only a question as to the respective rights of the employers and the deceased employee concerning the master's duty to provide a safe place of work, in connection with the servant's duty to use ordinary diligence for his own safety, and suggest that it is inferable, from the allegations of the petition, that the death of the plaintiff's son was due either to the risks assumed under his contract of employment, or that his own negligence in failing to exercise ordinary care caused the injury, or so contributed thereto as to prevent a recovery.

So far as the demurrer which raises the point that the deceased had means, equal with those of the master, of knowing the incompetence of the superintendent and foreman is concerned, we are of the opinion that this point is met by the allegation of the petition to the effect that the plaintiff's son had only been in the employ of the defendant for a few days, for if this fact is established, the jury would be authorized to conclude (though not required to do so) that neither the servant's knowledge nor his means of knowledge was equal to that of the master. Of course, prima facie, the master must be presumed to have chosen a proper supervisor to oversee his servants, but we think the allegations of the petition are sufficient to shift the burden, if they be admitted to be true (as these allegations must be upon demurrer), in so far as the facts stated are well pleaded.

The points raised by the other two special grounds of demurrer may be treated together; for it may be asserted as fundamental that it is the duty of a master to provide a reasonably safe place to work, and to provide for such suitable inspection as will protect the servant by keeping his place of work safe during the servant's performance of his labor. One who contracts to work upon a swaying skeleton steel framework assumes all of the risks reasonably incident to that kind of employment, but, confessedly, the rules to which we have just referred (in case the work is known to be highly dangerous) require of the master a much greater degree of diligence (in the popular, and not the strictly legal sense) in discharging his duty of providing a safe place to do work which is intensely dangerous than if the work to be done were not attended

with danger. "Ordinary diligence" is a variable term. It is such diligence as is adjusted to and benefits circumstances which require the exercise of reasonable care and foresight and prudence. What would, under one set of circumstances, be ordinary diligence on the part of a master in providing for the safety of his servants might well, in another case, be adjudged to be positive indifference and utter negligence if no more provision for the servants' safety were made in the latter case than in the former, although in the latter the master knew that the work to be performed would require additional precautions in order to make the place of work as reasonably safe (comparing conditions) in the one case as in the other. And on the other hand, precautions which in a very dangerous undertaking would amount to nothing more than the exercise of ordinary diligence tending to make reasonably safe the place of work would perhaps become manifestations of diligence so extraordinary, and even useless, as to be positively ridiculous if applied in a place of work which might in its nature and condition reasonably be assumed to be free from danger. The plaintiff's son assumed with his employment the ordinary risks of a dangerous employment, but in assuming these risks he had also the right to assume that such reasonable precautions as would amount to ordinary diligence under the peculiar circumstances and as would be adjusted to those circumstances had been used and would be continued in use by the master in order to make his place of work reasonably safe. A jury might be authorized to find that the plaintiff's son at the time of his death knew of the vibrations of the building and of the fact that the planks used as platforms were not fastened or bolted to the structure, and that these planks were liable to be displaced by the vibrations. But if the allegations of the petition are sustained by proof, and the jury should find that the defendant failed in its duty of inspection, and thereafter failed to adopt such measures for keeping the platform in position as reasonable prudence would have dictated, and such as would be adopted by a man of ordinary prudence, and find that the act of the plaintiff's son, under the circumstances detailed in the petition, was not such contributory negligence as to defeat recovery, the jury might then be authorized to conclude that the plaintiff's son came to his death by the concurrence of those conditions (which were possibly known to him) with the negligence of the defendant in engaging and retaining an

incompetent superintendent and foreman, and in not providing the riveters gang with a foreman for the purpose of inspection. As a general rule, the mere fact that a servant knows that the work in which he is engaged is dangerous does not of itself preclude recovery, and diligence in service may cause a faithful servant to be, in some degree, forgetful of his own safety or, for the moment oblivious of the presence of some danger, but this diligence (provided it does not lead to rashness) should not be penalized. *King* v. *S. A. L. Ry.*, 1 *Ga. App.* 88 (58 S. E. 252) ; *So. Ry. Co.* v. *Diseker*, 13 *Ga. App.* 799 (81 S. E. 269). All questions of negligence and diligence are, to a degree, comparative, and such questions are essentially and peculiarly for the jury to determine. There is no unvarying, stereotyped rule defining diligence, under which every case can be measured by the same yardstick. Under the provisions of section 3131 of the Civil Code, "A servant assumes the *ordinary* risks of his employment, and is bound to exercise his own skill and diligence to protect himself." And so, in suits for injuries arising from the negligence of the master in failing to comply with his duties (including the duty of inspection), it must be shown that the master knew or ought to have known of the incompetence of the other servants, or of the defect or danger in the machinery supplied, and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary diligence could not have known thereof; but any one or all of the evidentiary requirements may be met by circumstantial evidence, as well as by direct proof, if the former is sufficient to sustain the preponderance of evidence.

The gist of the allegations of the plaintiff is that her son did not assume the extraordinary risks due to the defendant's nonperformance of its duty of inspection; that he did not have equal means of knowing this fact, because he had been in that employment such a short time, and that he did not know and had no means of knowing of the incompetence of the superintendent and the foreman, who he had the right to assume were competent and whom the master knew to be incompetent. The circumstances in proof upon a trial hereafter may show that by the exercise of ordinary care the plaintiff's son could have known of the incompetence of the superintendent and the foreman, and that he could have known that the place was dangerous because there was no inspection whatever,

or that he did know this fact; but the allegations of the declaration do not disclose this to be the case.

In our opinion the facts of this case distinguish it from those involved in *Ludd* v. *Wilkins,* 118 *Ga.* 525 (45 S. E. 429), and the numerous cases in which the same principle has been announced, in one very important respect, to which we have already alluded. There can be no question that knowledge of a fact which is charged as negligence against the master will defeat a recovery for damage alleged to be the result of the particular act of negligence, if the servant had equal means with the master of knowing it, or if by the exercise of ordinary care he could have discovered this fact. But this rule is subject to qualification when the facts require the application of the rule which makes it the master's duty to provide and maintain for his servant a safe place to work, in connection with and accompanying the obligation of exercising such diligence as is commensurate with the danger, which, although it is known, the servant is obliged to encounter if the work be performed. For example, the marvelous development of electrical devices in common use affords daily instances where the servant could perhaps by prolonged investigation ascertain the volume, energy, and character (and consequent peril to himself) of an electrical current to which he would probably be exposed in performing certain acts, and yet the necessities of the work require him to rely upon the master's performance of the duty of inspection, and to assume that the appliance which he is using is reasonably safe—or else the work could not be performed at all. The doctrine that the servant can not recover for the results of an act or condition whose dangers, and the probable consequences of which, he knew or could reasonably have foreseen is also to be considered in connection with, and is frequently modified by, the servant's rightful reliance (in a case in which the appliances are movable and their position subject to change) upon the master's performance of his duty of continuous inspection; and the circumstances may be such as to make the performance of this duty by the master paramount to the servant's duty to acquire information of such changes. It could not well be otherwise, since the duty of the servant is to work, and the duty of the master to protect. It is upon this theory that we see a clear distinction between the case at bar and that of *Ludd* v. *Wilkins,* supra, and similar adjudications. In that case planks had been placed,

extending from one bracket to the other, for employees to stand upon while engaged in work. These planks were apt to slip off the brackets, and the slipping could have been prevented by nailing pieces under the end of the plank, or by putting a bolt through each end, or by tying the plank to the bracket. However, none of these methods were adopted. The planks were laid loosely on the bracket, and the condition of the contrivance was in plain view of the servants engaged in the work at hand. The court held that the plaintiff could not recover, because the servant, as well as the master, knew that there was danger of the plank slipping, and with this knowledge himself assumed the risk. Taking the decision in that case in the view most strongly adverse to the case of the present plaintiff, the decision is, as we see it, nothing more than a statement of the general rule to which we have already adverted—that the servant can not recover for the results caused by a danger of which he was fully aware, and the implied holding that, under the particular facts stated, the master was relieved from the duty of further inspection. In that case the servant, Ludd, met his death while himself engaged in replacing the plank upon the iron brackets with iron pieces. The decision is placed wholly upon Ludd's knowledge, and it is of course very evident that at the time when he placed the piece of iron he knew, or could have known, better than anyone else, of the insecure position of the plank, if it had been slipped too far. It was the plank upon which he and he only was engaged in standing at his place of work. In the case at bar the plaintiff's son was not at work upon the piece of timber which caused his death. The work upon which he was then engaged placed him upon a different piece of timber; but the timber, which had become displaced by the vibrations in the frame of the building, had been left at a former place of work for the riveters (of whom the plaintiff's son was one), and thereafter was employed as a means of passing from one portion of the framework to another. If the injury to the plaintiff's son had been caused by a fall from the piece of timber upon which Spencer had been standing at his place of work, the instant case would perhaps be controlled by the decision in the *Ludd* case, supra, although in *Ludd's* case the steel framework and the brackets were absolutely stationary, and in the case at bar the petition states that the structural steel frame was subject to constant vibrations during the hours of work, and swayed with the movement of the

hoisting machine. But if, as we apprehend, it was the duty of the defendant in the present case, keeping in view the swaying of the steel framework and the vibrations—even granting that the plaintiff's son knew of these conditions,—to continue to inspect those accessories which it was the defendant's duty either to remove from time to time or else to maintain in a safe condition, and bearing in mind that the duty of inspection always rests wholly upon the master, then it would seem to us to follow that a jury would be authorized, if the allegations of the petition are supported, to find that the defendant's failure to discharge this duty was the prime cause of Spencer's death, in that its failure to inspect and to maintain a safe place to work created a snare and a pitfall which he would have had no reason to suspect if he had relied (as he had the right to rely) upon the master's performance of the duty of inspection. No such condition as that detailed in the plaintiff's petition existed in *Ludd's* case, for the obvious reason, if no other, that the petition in that case stated no fact indicating that there rested upon the master any duty to make a further inspection, or to replace or remove the planks upon which Ludd was working, either fully cognizant of surrounding conditions or at least possessed of equal opportunity of knowing their true condition; and what is more important, Ludd was empowered to place the plank in a safe position, and was in duty bound to do so if it was unsafe.

In the case at bar it may be that the plaintiff was negligent in leaving the timber whereon he was engaged at work. That is a question for the jury. But as to other planks to be used as a platform passageway, the duty of this servant, under the allegations of the petition, had ceased, provided that in using them in any way he exercised ordinary care for his own safety. Under the allegations of the petition, when the riveters ceased to use any particular piece of timber in their riveting work, it was subject to be removed at the will of the master, and would be removed, unless placed by him for purposes of passage; and over these matters the servant had no control.

The jury may find that the plaintiff's son, in the exercise of ordinary diligence, could have seen that one end of the scantling had left the iron framework which formerly supported it; and if they so find, of course the plaintiff can not recover; but the allegations of the petition at least leave it issuable as to whether Spencer

was obliged to have known that one end of the scantling had swung loose; and, therefore, this question must be submitted to the jury. *Judgment reversed.*