### 12052.  SPIRES *v.* GOLDBERG *et al.*

1. Where one has violated a penal statute of this State which forbids the sale of a pistol to a minor, and injury results therefrom, he should be held liable for the injury if it be a natural and probable consequence of the violation of the statute and should reasonably have been anticipated by the offender as a natural and probable result of his unlawful act.

2. If, subsequently to the original wrongful act, a new cause intervened,

sufficient of itself to stand as the cause of the injury, the former will be considered as too remote. But if the intervening cause and its probable consequences should reasonably have been anticipated by the original wrongdoer as a natural and probable result of the wrongful act, the causal connection between the wrongful act and the injury is not broken, and an action for resulting damages will lie against the original tort-feasor.

3. A tortious act may have several consequences, concurrent or successive, for all of which the first tort-feasor is responsible; and a consequence of an original wrong may in turn become the cause of succeeding consequences, and should not be regarded as an efficient intervening cause which will excuse the original cause, so long as it appears that the injury is attributable to the original wrong as a result which reasonably might or ought to have been anticipated and foreseen.

4. The allegations of the petition show that the defendant sold to a minor loaded cartridges and a pistol in violation of the criminal statute of the State; that this minor, some days afterwards, lent the pistol to another minor, and the latter shot, injured, and damaged a third minor, who brought suit against the defendant as the original wrongdoer. *Held*, that these allegations, with others in the petition, presented issuable facts relating to the cause of action and the liability of the defendant which should have been submitted to the jury, and the court erred in sustaining the demurrer and dismissing the petition.

DECIDED MARCH 16, 1921.

Action for damages; from Richmond superior court — Judge Henry C. Hammond. December 4, 1920.

The petition, briefly stated, makes the following allegations: In November, 1919, the defendants sold to a named minor, about fourteen years of age, a pistol and loaded cartridges to be used in it; and in the following January this minor loaned the pistol to a minor of about the same age, for the purpose of using it in target practicing. Two days later this second minor took the pistol to school, for the purpose of returning it, and while he was playing with it and demonstrating it to another minor, it was discharged, and the bullet entered the petitioner's right shoulder, inflicting a dangerous and painful wound. The petition alleges that the defendants were negligent in selling the pistol to a minor, in violation of the statute of the State of Georgia, that they were criminally negligent in so selling it, and were guilty of negligence per se, that they knew or by the exercise of ordinary care and forethought should have known that by reason of the immature age and lack of experience and understanding of the minor to whom they sold the pistol the public

was endangered and some one was liable to be killed or injured by the weapon.

The defendants demurred generally on the ground that no cause of action was set forth; that the sale of the pistol to a minor, and the lending of the pistol, nearly sixty days thereafter, by that minor to another minor, by whom it was accidentally discharged while he was playing with it, did not constitute the immediate cause of the injury received by the plaintiff, and the injury could not have been reasonably expected by the defendants; that the proximate cause of the injury was the act of the minor who negligently discharged the pistol; that it was not such a probable result as could have been foreseen by the defendants so as to make them liable therefor; that the mere sale of the pistol to a minor, even though in violation of the statute, there being no reason to anticipate that he would, after an interval of sixty days or more, lend it to another minor, who might inadvertently, by demonstrating it, injure a third minor, was not, in legal contemplation, to be anticipated by the defendants in the sale of the pistol. The demurrer was sustained and the petition dismissed, and the plaintiff excepted.

*P. H. Rowe, J. L. Bussey Jr., Henry G. Howard,* for plaintiff.

*C. Henry & R. S. Cohen,* for defendants.

HILL, J. (After stating the foregoing facts.) Section 350 of the Penal Code of this State (1910) forbids the sale of pistols to minors and makes the violation of the statute a misdemeanor. It has been uniformly held in this State that a violation of a penal statute, resulting in injury, is negligence per se and authorizes a recovery by the party injured, without other negligence. *Platt* v. *Southern Photo Material Co.,* 4 *Ga. App.* 159 (60 S. E. 1068); *Elk Cotton Mills* v. *Grant,* 140 *Ga.* 729 (79 S. E. 836, 48 L. R. A. (N. S.) 656). There is no doubt as to this legal proposition; and if the minor who bought the pistol from the defendants had intentionally or negligently discharged it, causing injury to another, in the absence of negligence on the part of the injured person, the right to recover damages would result, without proof of any other act of negligence on the part of the defendants. 1 Thomp. Neg. § 10.

Did the fact that the injury was not inflicted by the minor to whom the defendants sold the pistol, and did not " follow

immediately upon" the violation of the statute, but was inflicted by another minor, to whom the pistol was loaned by the first minor, prevent a recovery of consequential damages? The solution of this question depends upon the application to the facts, admitted to be true by the demurrer, of the well-settled principles of law relating to proximate and remote cause. As tersely stated in section 4509 of the Civil Code (1910), "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer." And the next section of the code (§ 4510) states the rule for ascertaining when damages can be recovered: "Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. But damages traceable to the act, but not its legal or material consequence, are too remote and contingent." These definitions are in substantial harmony with the decisions of the courts and the dicta of text-writers. The divergent and conflicting views are due to the difficulty of application of the principle to the particular facts of the case. Nothing new can be added to the many exhaustive discussions on the subject by the courts and learned writers, and we will content ourselves with a statement of the accepted general rule and endeavor to make such application of the facts of this case as will correctly indicate the proper legal conclusion. The general rule of law is that "whoever does an illegal or wrongful act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided these acts causing the damage were the necessary or legal and natural consequences of the original wrongful act." Addison on Torts (Wood's ed.), § 12; *Southern Ry. Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109); *Valdosta Street Ry. Co.* v. *Fenn,* 11 *Ga. App.* 587 (75 S. E. 984). In further elucidation of the subject it may be stated, in the apt language of the attorney of the plaintiff in error in his excellent brief: "A tortious act may have several consequences, concurrent or successive, for all of which the first tort-feasor is responsible, and a consequence of an original wrong may in turn

become the cause of succeeding consequences, and should not manifestly be regarded as an intervening cause which will relieve the original cause, so long as it affirmatively appears that the mischief is attributable to the original wrong as a result which reasonably might have been, or ought to have been, foreseen as probable." *Southern Ry. Co.* v. *Webb,* supra; *Valdosta Street Ry. Co.* v. *Fenn,* supra.

The earliest illustration of the above-stated legal rules is found in the celebrated " squib " case, frequently referred to and approved by subsequent learned authorities. In that case the defendant threw a lighted squib into a large concourse of people in a market. " The squib fell upon the standing of one Yates, who sold gingerbread; one Willis instantly, and to prevent injury to himself and the said wares of the said Yates, took up the lighted squib from off the said standing, and then threw it across the . . market-house, when it fell upon another standing there of one Ryal, who sold the same sort of wares, who instantly, and to save his own goods from being injured, took up the said lighted squib from off the said standing, and then threw it to another part of the market-house, and, in so throwing it, struck the plaintiff . . . in the face therewith, and the combustible matter then bursting put out one of the plaintiff's eyes. " The judges unanimously held that the action was maintainable against the wrongdoer who first threw the lighted squib. The language of the judges in that case is strongly applicable to the facts of the instant case. Nares, J., said: " Wherever an act is unlawful at first, trespass will lie for the consequences of it. He [the defendant] is the person who . . gave the mischievous faculty to the squib. That mischievous faculty remained in it till the explosion. No new power of doing mischief was communicated to it by Willis or Ryal. It is like the case of a mad ox turned loose in a crowd. The person who turns him loose is answerable . . . for whatever mischief he may do. The intermediate acts of Willis and Ryal will not purge the original tort in the defendant. But he who does the first wrong is answerable for all the consequential damage. " Gould, J., was of the same opinion with Nares, J. " I agree with Brother Nares, that wherever a man does an unlawful act, he is answerable for all the consequences. . . I think the

defendant may be considered in the same view as if he himself had personally thrown the squib in the plaintiff's face." De-Grey, C. J., said: "The true question is, whether the injury is the direct and immediate act of the defendant; and I am of opinion that in this case it is. . . I look upon all that was done subsequent to the original throwing as a continuation of the first force and first act." Scott v. Shepherd, 2 Wm. Blackstone, 892. This case is quoted from at length because it has been substantially followed ever since, and Mr. Thompson calls it "the best illustration of the doctrine of proximate and remote cause and of the interposition of causes deemed to have been set in motion by the original wrong-doer." 1 Thomp. Neg. § 53.

Let us briefly apply to the facts of the instant case the law as announced by these learned judges. Here the defendants were the original wrongdoers. They gave the "mischievous faculty" to the pistol with the loaded cartridges when they sold it to the minor in violation of the penal statute. That "mischievous faculty" remained in the pistol while the first minor had it in his possession and until it exploded in the hands of the second minor. The intermediate act of the second minor did not purge the original criminal act of the defendant. The fact that the first minor had possession of the pistol for some time is not material. The illegal act of placing it in his possession made the defendants responsible for any damages resulting as a legal and reasonable consequence until protected by the statute of limitations.

There are many other cases illustrating the point now under consideration and supporting the view we take of this case, but we will cite only two which come nearest to analogy. In Fowell v. Grafton, 22 Ontario Law Reports, 550, the defendants sold an air-gun to a boy, who used it to shoot birds. While engaged in that pastime one of the bullets injured the plaintiff, who sued the defendants for damages, alleging negligence. A verdict was found for the plaintiff and on appeal the judgment was affirmed. The selling of the air-gun to a minor was a violation of the statute. Clute, J., in his opinion, used the following language appropriate to the instant case: "Was the sale the *causing cause* of the accident, or was it too remote to be so re-

garded? The prohibition against selling an air-gun to an infant under sixteen years of age was, no doubt, to protect the child and the public as well from the danger which would arise from an instrument of that kind being placed in the hands of such a person. The sale of the instrument makes the danger possible, and in that sense the defendants have created a dangerous condition of affairs, which in effect resulted in the injury complained of. . . The prohibition must mean that if a child of tender age had a gun, he would probably use it, and if he used it he would probably hurt either himself or somebody else. . . During all the time the infant had possession of the gun, that possession was unlawful, and made unlawful by the defendants. He was unlawfully possessed of it by their act; the natural result following — having become possessed of the weapon, he used it, and in using it caused the injury. His final act in the using is so connected with the prohibition that I do not think . . it is so remote as to have entitled the defendants to have the case withdrawn from the jury. " In Binford *v.* Johnston, 82 Ind. 426, the facts are as follows: Two boys, one aged ten and the other twelve years, purchased of a dealer cartridges for use in a toy pistol. It was against the statute to sell pistol cartridges to minors. Shortly after the purchase the toy pistol, loaded with one of the cartridges, was *picked up* by another minor who discharged it, killing one of the minors first mentioned. It was held that the dealer was liable for the death of the boy killed. The judge who spoke .for the court used the following language strongly applicable to the facts of the case now under discussion: " A man who places in the hands of a child an article of a dangerous character and one likely to cause injury to the child or to others is guilty of an actionable wrong. . . The more difficult question is whether the result is so remote from the original wrong as to bring the case within the operation of the maxim *causa proxima, et non remota, spectalur.* . . The fact that some agency intervenes between the original wrong and the injury does not necessarily bring the case within the rule; on the contrary, it is firmly settled that the intervention of a third person or of other and new direct causes does not preclude a recovery if the injury was the natural or probable result of the original wrong. Billman *v.*

Indianapolis, etc., R. Co., 76 Ind. 166 (40 Am. R. 230). This doctrine remounts to the famous case of Scott *v.* Shepherd, 2 W. Black. 892, commonly known as the 'squib case.' The rule goes so far as to hold that the original wrong-doer is responsible, even though the agency of a second wrong-doer intervened. This doctrine is enforced with great power by Cockburn, C. J., in Clark *v.* Chambers, 7 Cent. L. J. 11; and is approved by the text-writers. . . It is a probable consequence of such a sale as that charged against appellant that the explosives may be so used by children, among whom it is natural to expect that they will be taken, as to jeopard the buyers or their associates. . . One who deals with children must anticipate the ordinary behavior of children. The appellant was bound to take notice of the natural conduct of lads like those to whom he sold the cartridges, and it cannot be justly said that the acts of the lads in carrying the pistol with them to their home, and leaving it upon the floor within reach of their brother and playmate, was an unnatural or improbable one." So in the instant case, were not the defendants, when they sold the pistol to the minor, legally bound to take knowledge of the habits of boys to lend their pistols to their playmates, and that minors are in the habit of great negligence in handling these weapons while playing with and exhibiting them to other playmates? The purpose of the legislature, in the act making it a misdemeanor to sell a pistol to a minor, was twofold — to protect that class and to prevent injuries resulting from negligence in the handling of these dangerous weapons by irresponsible persons. Knowledge of this purpose in a legal sense was chargeable to the defendants when they violated the law by selling the pistol to the minor. With such knowledge, is it not reasonable to assume that they were also chargeable with notice that a violation of the statute would result in the evil which its enactment was intended to prevent?

We conclude that under the allegations of the petition, admitted to be true by the demurrer, the question whether the violation of the statute by the defendants was the proximate cause of the plaintiff's injury, and the injury a result which he might in the exercise of prudence have reasonably anticipated as a natural result of his unlawful act, or whether the act of

the minor who actually shot the plaintiff was such an intervening efficient cause as would prevent the unlawful act of the defendant from being the proximate cause, was a question properly determinable by the jury. 22 R. C. L., § 31; *Mills* v. *Central of Ga. Ry. Co.,* 140 *Ga.* 181 (78 S. E. 816, Ann. Cas. 1914C, 1098) ; *Mayor &c. of Unadilla* v. *Felder,* 145 *Ga.* 440 (89 S. E. 243) ; *Bonner* v. *Standard Oil Co.,* 22 *Ga. App.* 535 (96 S. E. 573) ; *Sparta Oil Mill* v. *Russell,* 6 *Ga. App.* 296 (65 S. E. 37).

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*