17320.  BANK OF BULLOCHVILLE *v.* RIEHLE.

1. In this action upon a note for purchase-money of land, the defendant's answer, as amended, when considered on general demurrer only, constituted a valid plea of damage by material misrepresentations as to the location of the boundaries of the tract sold.  ·

2. The evidence, however, failed to sustain the plea or to prove any other lawful defense, and the finding of the court without a jury, in favor

Deeds, 18 C. J. p. 260, n. 38.
Fixtures, 26 C. J. p. 676, n. 21.
Pleading, 31 Cyc. p. 306, n. 1.
Vendor and Purchaser, 39 Cyc. p. 1959, n. 26; p. 1973, n. 28.

of a partial abatement of the purchase-money, was contrary to the evidence and without evidence to support it.

DECIDED FEBRUARY 26, 1927.

Complaint; from city court of Greenville—Judge Tuggle presiding. March 22, 1926.

*N. F. Culpepper, R. A. McGraw,* for plaintiff.

*Terrell & Terrell,* for defendant.

BELL, J. The Bank of Bullochville brought suit upon a promissory note against H. C. Riehle, the maker. The defendant filed an answer and several times amended it, the plaintiff at all times demurring. The plaintiff's demurrers were overruled, and, the case having gone to trial before the judge without a jury upon the issues as made by the answer as amended, and the trial having resulted partially in favor of the defendant, and the plaintiff's motion for a new trial having been overruled, the plaintiff excepted. The chief burden of the plaintiff's demurrers was the general insistence that the answer set forth no valid defense. Various allegations of the so-called special demurrers were but amplifications of this contention. One of the special demurrers criticized the answer because it set forth no definite or correct measure of damage, but the demurrer as to this point, having failed to point out any proper or correct measure, was not better than the answer. Such other grounds of special demurrer as might at some stage have been meritorious were sufficiently met by amendments to the answer. Thus, the only question for determination on the exceptions to the overruling of the demurrers is whether the court erred in not sustaining the general demurrers, or, in other words, whether the answer set forth any defense. The answer as amended alleged: The note had been executed for part of the purchase-money of certain real property to which the plaintiff executed and delivered to the defendant a bond for title. Although the defendant's original contract to purchase was made with one W. B. Butts, the obligations of the latter were assumed by the plaintiff bank, so that the bank, and not Butts, issued to the defendant the bond for title. In that instrument it was recited that the defendant had paid the sum of $2,000, and it was stipulated that upon payment of the further sum of $3,000, as evidenced by the defendant's note payable to the bank, the bank would make to the defendant good and sufficient title to the following property in

this State: "A certain tract or parcel of land situated, lying and being in the town of Bullochville, Meriwether county, and described as follows: the entire coffin manufacturing plant of the Bullochville Casket Company, together with all buildings connected therewith and all machinery and materials now owned by said company and plant. The said manufacturing plant is located in said State and county and in said town and district, and the same included all of town lot 5 and lot 6 in block D of the town of Bullochville, and containing one acre more or less, all of which is bounded as follows: north by the right of way of A. B. & A. Ry., east by land of Mrs. Ida May Brooks, south by Broad st., west by lands of B. H. M. Guano Co." A part of this property, namely, a certain line of water-pipe and a concrete tank, a portion of one building, all of another building, and the dry kiln were situated on the lands of others, who had respectively demanded of the defendant that he surrender possession thereof. Lot 5 is also in the possession of another, while the defendant is in possession of lot 6 only. "The difference in the value of the property he is in possession of and the other property herein referred to which is claimed by the parties hereinabove mentioned who have outstanding paramount titles to same is the sum of $3,000, and he therefore seeks an abatement in the purchase-price in the sum of $3,000." The defendant did not at any time think or suspect that any part of the buildings or of the machinery was on any other land than lots 5 and 6, but, in good faith relying upon representations made to the defendant "by the said W. B. Butts and the said plaintiff" that such buildings and appurtenances were so situated, he entered into the contract of purchase and accepted the bond for title. "Said W. B. Butts and plaintiff represented that all of the plant and said buildings were on the land sold defendant, which representations were fraudulent and a fraud [was] perpetrated on defendant." One of the amendments to the answer shows that the lots, while sold as numbers 5 and 6, were intended as numbers 6 and 7. The defendant purchased the property believing from the plaintiff's representations that all of the buildings were situated on these lots (6 and 7), to which the plaintiff delivered possession to the defendant. The defendant purchased the property as a plant and factory for the manufacture of coffins, and, because certain of the buildings and appurtenances are situated on the property of others,

he is damaged in the sum of $4,500, in that it would cost this amount to remove the buildings and locate them upon the lots purchased, in. a manner suitable to the business, such removal being necessary to enable the defendant to carry on the business of manufacturing caskets. This alleged damage being in excess of the amount of the note sued on, the amended prayer of the answer was to recover of the plaintiff the, excess. In a final amendment to the answer the defendant alleged, "that the said W. B. Butts pointed out and described all the buildings and plant purchased from him by defendant as being on the land described in said bond for title; that the contract and agreement made and entered into by and between the defendant and the said W. B. Butts including an inventory of the property, all of which is attached, and the entire contract was taken over by the plaintiff in this case, the Bank of Bullochville, and the said Butts' agreement and contract including said inventory, and all of said representations made by said Butts were known, assumed, and taken over by said bank when and at the same time said bond for title was executed by said bank to said defendant; and the said Butts and the said bank were acting in concert and together in the making and executing said bond from the bank to said defendant, and each well knew the acts and conduct of the other and participated in and ratified all of said representations, acts, and conduct as set forth in defendant's answer and amendment thereto, and both the said Butts and the said bank well knew that the said bank could not make this defendant good and sufficient title to all the property that defendant was put in possession of by plaintiff under its said bond for title." The contract and inventory referred to as being attached to the amendment quoted above do not appear from the record in this court to have been so attached.

While the answer as first drawn alleged that the defendant purchased lots 5 and 6 and was not in possession nor able to obtain possession of lot 5, it appeared from allegations made by amendment that the defendant, being in possession of lots 6 and 7, was not complaining of his want of possession of lot 5, and that he was in peaceful possession of all of the property which he claimed the plaintiff was obligated to convey to him, including all buildings and appurtenances.

1. There is no contention that the defendant, with the excep-

tion of the houses, the pipe line, and the concrete tank (all of these, except where otherwise stated, to be hereinafter referred to as houses or buildings), failed to acquire all of the property that he bargained for. The complaint is that the houses, or a part of them, which the plaintiff contracted to convey to the defendant should, according to representations, have been situated on lots 6 and 7, whereas they were located on lands belonging to other persons, and for that reason plaintiff can not make good title thereto. In other words, the *answer* makes no complaint that the plaintiff was to convey to the defendant any land except the two lots and the buildings that were thereon or that should have been thereon. The defendant may have intended to plead the loss of these buildings, considered as a part of the land, through a defect of title, and to claim a reduction of price according to the relative value of the "land" lost, under the provisions of section 4124 of the Civil Code (1910). Assuming that such was the pleader's purpose, there was a complete failure to show any dam-. age recoverable under this section. The only allegation which could have been designed to state any damage resulting from the loss of a part of the land from defect of title was that the difference between the value of the property of which the defendant is in possession and the value of the property of which he is not in possession is $3,000. In this averment there is absolutely no hint of the value of the buildings alleged to have been lost, nor is there anything here to show any damage whatever, either by the correct measure or by a wrong measure. However, the allegations that the buildings were represented to be situated on lots 6 and 7 when they were located elsewhere is the same as averring that the boundaries of these lots were represented as being so located as to include the buildings, and the answer as a whole constituted a valid plea of material misrepresentations made by the bank through Butts as its representative, as to the location of the boundaries of the land bargained for, and thus as to the extent and contents of the tract sold. On the question of whether the defendant, in alleging the cost of removing the buildings, set forth the correct measure of damage, it is only necessary to say that the mere fact that the defendant may have claimed the wrong measure would not render the answer subject to general demurrer. *Smith Co.* v. *Strickland Cotton Mills, 6 Ga. App.* 522 (65 S. E. 320) ; *Baxley*

*Tie Co.* v. *Simpson,* 1 *Ga. App.* 670 (57 S. E. 1090) ; *Harley Hardware Co.* v. *Lafond Co.,* 28 *Ga. App.* 584 (4) (112 S. E. 394) ; *Ford* v. *Fargason,* 120 *Ga.* 708 (6) (48 S. E. 180) ; Civil Code (1910), § 4623. It follows that the exceptions to the overruling of the general demurrer invoked no decision as to what is the correct measure of damage. Furthermore, in view of what we shall say later on, we do not think the question can become pertinent in this case. It certainly can not, under the present record. But see, in this connection, *Smith* v. *Kilpatrick,* 79 *Ga.* 410 (2) (7 S. E. 258) ; *Folsom* v. *Howell,* 94 *Ga.* 112 (2) (21 S. E. 136) ; *Briesenick* v. *Dimond,* 35 *Ga. App.* 668 (6) (134 S. E. 350) ; *Mayor &c. of Savannah* v. *Spalding Construction Co.,* 29 *Ga. App.* 792 (116 S. E. 346) ; and, as to duty to reduce damage, Civil Code (1910), § 4398; *Athens Mfg. Co.* v. *Rucker,* 80 *Ga.* 291 (4) 4 S. E. 885) ; *Holbrook* v. *Norcross,* 121 *Ga.* 319 (2) (48 S. E. 922) ; *Jeter* v. *Davis,* 33 *Ga. App.* 733 (127 S. E. 898). While, as we have seen above, the defendant's first attempt at alleging damage was wholly futile, we can not make such ruling with regard to the answer as a whole, in view of the allegations as to damage in the sum of $4,500 as set out.

Our conclusion that the answer constitutes a valid plea of material misrepresentations as to the location of the boundaries of the land sold is deemed not to be in conflict with the rule as stated in *Black* v. *Walker,* 98 *Ga.* 31 (26 S. E. 477), notwithstanding it affirmatively appears that the defendant was in possession of all the property which he claims the plaintiff was obligated to convey. If the rule laid down in that case can have any application to a plea of misrepresentation of boundary lines, the requirements of such rule were satisfied in the present case, the plea having sufficiently alleged actual moral fraud (*Northwestern Life Ins. Co.* v. *Montgomery,* 116 *Ga.* 799 (2), 43 S. E. 79), although it is not always necessary to allege such actual fraud in a claim of damage by misrepresentations as to the location of boundaries. Civil Code (1910), § 4623; *Allison* v. *Nunn,* 34 *Ga. App.* 561 (130 S. E. 364), and cit. Even if it could be said that without such allegation the plea in this case would have been fatally defective under the doctrine of the *Black* case, supra, yet, since the allegation was here in fact made, the case would seem to fall within one of the exceptions to the rule enunciated in that case.

In our opinion, the court did not err in overruling the general demurrers to the defendant's answer as amended. See, in this connection, *James* v. *Elliott*, 44 *Ga.* 237; *Smith* v. *Kilpatrick*, 79 *Ga.* 410 (2) (7 S. E. 258); *Folsom* v. *Howell*, supra; *McCrary* v. *Pritchard*, 119 *Ga.* 876 (7) (47 S. E. 341); *Edenfield* v. *Rountree*, 33 *Ga. App.* 444 (126 S. E. 731).

2. Our conclusion as stated above is necessarily predicated upon the allegation, among others, that the plaintiff bank knew, participated in, and ratified all the representations of W. B. Butts as set forth in the answer and the amendments thereto, and acted in concert with him in such matters. According to the plea, it was only through Butts that the bank made any representations as to the location of the boundaries. We find that the case as made by the evidence is entirely different from that made by the pleadings. According to the evidence, the defendant's original contract of purchase was made with Butts, from whom the defendant was later to have a bond for title. Butts, however, was indebted to the bank, and the bank held title to the property as security for the debt. To avoid a circuity and to liquidate the debt in part, it was agreed among all parties concerned that the defendant's note of $3,000 for deferred payment should be made payable to the bank, and should be accepted by the bank in discharge to that extent of the obligations of Butts, and that the bank would execute to the defendant a bond for title to the property. This agreement was carried out by the execution of the papers accordingly. There is nothing to show that the bank had any other connection whatever with the transaction. If representations were made by Butts as to the location of the boundaries, they were made during the original negotiations and not in behalf of the bank. He was not at any time the agent of the bank, and, so far as appears, the bank had no knowledge of any such representations, at the time it executed the bond for title. The bank was not bound by the previous statements of Butts merely because it held title to the property to secure an indebtedness by Butts and agreed to execute and did execute the bond for title in pursuance of the previous contract between Butts and the defendant. *Weaver* v. *Stoner*, 114 *Ga.* 165 (39 S. E. 874). It follows that the defendant utterly failed to establish his plea of damage by misrepresentations as to the location of the boundaries of the property sold. Perhaps we could

with propriety conclude the case here; but, since in our opinion the character and effect of the defendant's testimony and the absence of any evidence of misrepresentations to which the bank was a party render applicable other principles of law under which the result attained in the lower court was wrong, we will examine the case further in the light of such principles.

The defendant testified: "I made the trade with my brother, which was confirmed by Mr. Butts. My brother was acting as agent for Mr. Butts. I did not know where the north boundary line was located. That line pointed out to me as being the true line between the right of way and this property that I bought, lots 6 and 7, was a siding running along by the side of these buildings. That was pointed out as my line by my brother, O. A. Riehle. I am in possession of all buildings, and they belong to me when I pay the bank the money. I don't anticipate any trouble to that from the railroad company, the title to them is mine, the only thing is to move them off if they order them to be moved." "I am in possession of each and every building that was sold to me by Mr. Butts." "The land that I am now in possession of is bounded just as it is bounded in this bond for title, this bond here, north by the right of way of the A., B. & A. railroad." "I don't make any claims to lot No. 5. . . I am in possession of lot No. 6 and lot No. 7." "I did not buy any property except the property known as the property of the Bullochville Casket & Manufacturing Company." "Butts gave me possession of all of the plant and all of the buildings which are on this inventory, that is, all the ground and all the property listed on this inventory" (a list of all property involved in the sale, which list was furnished to the defendant at or prior to his original contract with Butts). "I am operating this property just as it was turned over to me by Butts." "I told Butts that I was unwilling for him or the bank to move the property off of the right of way." "I am going to move as soon as I am pleased to do so. I am not going to be pleased to do so until this is settled. The plans I have made about moving the buildings off the right of way, I have had a man to figure and give me the cost of moving them. I paid him money for making the estimate. I had no contract with him to move. I can not say that I contemplate making a contract with him or anybody else to move. I refuse to say whether I have

the remotest idea of paying $4,000 to get this property removed. I can not say I contemplate moving."

Counsel for the defendant, in their brief, make the contention, among others, that under the terms of the bond for title the bank was obligated to convey not only the two lots specifically mentioned and described, but certain buildings elsewhere located, including the "land" upon which they had been erected, and that although the bank may be in position to give title to the buildings, it can not make title to the lands on which they are situated, except as to those buildings or parts of buildings which are located on the two lots specified. It appears that the court below decided the case upon this theory. Whether or not this be the proper construction of the contract and one that may be urged under the plea as framed (compare 18 C. J. 760, § 216; 26 C. J. 676, § 39; 2 Devlin on Deeds, 2298; Powers *v.* Harris, 68 Ala. 409; Griffiths *v.* Morrison, 106 N. Y. 165, 12 N. E. 580; Hood *v.* Whitwell, 120 N. Y. Supp. 372, 66 Misc. 49; Wilson *v.* Wightman, 36 App. Div. 41, 55 N. Y. Supp. 806; Warren *v.* Blake, 54 Me. 276, 89 Am. D. 748), since it appears from undisputed evidence that the defendant continued in peaceful possession of all of the property described in the bond, and since the plea of damage by misrepresentation of the location of the boundaries was unsupported, and since there was nothing to show fraud, insolvency, or nonresidence on the part of the bank, or other facts to justify an equitable interference with the carrying out of the contract, the rule declared in *Black* v. *Walker,* supra, becomes operative. In that case the Supreme Court said: "The maker of promissory notes given for the purchase of land of which such maker holds undisturbed possession under a bond from the vendor, conditioned to make to the former a good and sufficient title to the land upon payment of the notes, can neither voluntarily rescind the contract of purchase nor defeat the collection of the notes, upon the ground that the vendor has not in fact a good title to the land in question, without showing clearly that there is a paramount outstanding title against the vendor, and also proving fraud upon his part, or that he is insolvent, or a nonresident, or else proving other facts which would authorize equitable interference with the carrying out of the contract as made." See further, in this connection, *McGehee* v. *Jones,* 10 *Ga.* 127; *Mallard* v. *Allred,* 106 *Ga.* 503 (32 S. E. 588); *Couch*

v. *Crane*, 142 *Ga.* 22 (9) (82 S. E. 459); *Henderson* v. *Fields*, 143 *Ga.* 547 (85 S. E. 741; *Newton* v. *Bowen*, 146 *Ga.* 524 (91 S. E. 684); *Reeves* v. *Lasseler*, 29 *Ga. App.* 490 (115 S. E. 925); *Reid* v. *McCune*, 30 *Ga. App.* 49 (116 S. E. 554).

We think the judgment of the court below was wrong for a further reason,—and there may be yet others which we do not mention. As we have seen above, the only damage alleged in the plea consisted of the cost and expense of removing the buildings and of placing them upon the two lots described, such removal, according to the plea, being necessary in order to enable the defendant to carry on the business of manufacturing caskets. These averments with respect to damage were not sustained by the evidence. The defendant saw the buildings and knew their situation and relative positions when he entered into the contract of purchase. His present sole complaint is that they are located on the lands of others. However, he is enjoying the use of them and they are serving the purposes for which he bought them. With the exception of the pipe line and the concrete tank, used for the purpose of supplying water, there is nothing to show that the defendant's eviction from any of the property by the true owner is imminent or will be ever attempted. Save as to the property referred to in the exception just stated, the railway company is the only person by whom the defendant could be molested, the plaintiff having purchased the lands on which all the other buildings in question were located. The defendant's testimony shows that he is not expecting any trouble from the railway company, and *all the damage which the trial court allowed to him in abatement of the purchase-money related to the prospective cost of removing the buildings from the property of that company;* whereas the only inference deducible from the defendant's testimony is that he does not contemplate having to remove the buildings, or removing them, at any time. Under his own testimony the only damage for which he attempts to assert claim has not been sustained and may never be sustained, and is therefore too remote and speculative to be the basis of a recovery, whether arising from fraud or from breach of contract. Civil Code (1910), §§ 4395, 4394, 4502, 4508, 4509, 4510.

Since the defendant, under the evidence, was not entitled to any abatement or recoupment whatever, and may never be, it is un-

necessary to determine what would be the correct measure of damage if any right to damages had been shown. This is what we meant when stating in the first division that the question of the correct measure of damage is not presented by the present record.

Whether or not the defendant may have a cause of action against some other person is a question with which we are not now concerned. In the present case the evidence established neither the defense pleaded nor any other defense under the law.

From what we have said, it is unnecessary to deal with the several special grounds of the motion for a new trial. However, under the rulings herein made, a number of them were well taken. The finding by the trial judge, acting without a jury, to the effect that the defendant was entitled to an abatement of the purchase-money to the extent of $2,000, was contrary to the evidence and without evidence to support it, and the general grounds of the plaintiff's motion for a new trial should have been sustained.

We have carefully examined the decision of the Supreme Court in *Riehle* v. *Bank of Bullochville,* 158 *Ga.* 171 (123 S. E. 124), in which case the present defendant excepted to the judgment of the superior court refusing an injunction against the prosecution of the instant case in the city court, and nothing which we hold herein is contrary to anything decided in that case.

*Judgment reversed.  Jenkins, P. J., and Stephens, J., concur.*