## 21286. HULSEY *v.* HIGHTOWER.

DECIDED DECEMBER 21, 1931.

*Hendrix & Buchanan,* for plaintiff in error. *G. N. Bynum,* contra.

BELL, J. (After stating the foregoing facts.) "A father is not liable for a tort of his minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit." *Chastain* v. *Johns,* 120 *Ga.* 977 (48 S. E. 343, 66 L. R. A. 958). "The liability of a parent for the tort of a minor child, under the law of this State, is analogous to the liability of a master for the tort of a servant while employed in the master's business and in the scope of his employment." *Harris* v. *Jones,* 17 *Ga. App.* 215 (87 S. E. 713). See further, in this connection, *Schimer* v. *Register,* 12 *Ga. App.* 743 (78 S. E. 731); *Cohn* v. *Cody Sales Stable Co.,* 14 *Ga. App.* 234 (2) (80 S. E. 661); *Dougherty* v. *Woodward,* 21 *Ga. App.* 427 (94 S. E. 636).

A father may be liable under some circumstances for the negligence or wrong of his child. The liability, however, does not depend upon the parental relation, but rests upon the same grounds upon which the father will be responsible for the negligence or wrong of any other person. Broadstreet *v.* Hall, 168 Ind. 192 (80 N. E. 145, 10 L. R. A. (N. S.) 933, 120 Am. St. R. 356).

The above principles are applicable to cases where it is sought to hold a father liable for an injury by his child, independently of any fault on the part of the father, but are not applicable where a

liability is claimed against the father for a negligent or wrongful act which is personal to himself, although the act of his child may be the immediate cause of the injury.

If the act of a child is legally traceable to the negligence of its father, the latter may be held responsible for injury and damage occasioned thereby; but in such a case the cause of action is founded upon the negligence of the father, and not upon the negligence of the child plus the paternal relation.

It appears in the present case that the defendant father furnished to his 15-year-old son the long-bladed knife with which the son inflicted the very serious injury upon the plaintiff. The question is, do the allegations show negligence upon the father's part in furnishing such knife to his son, under the crcumstances set forth in the petition? A good statement of the principles which should govern in a cause of this sort is found in Smith *v.* Salvaggio, 4 Tenn. Civ. App. 727, in which the plaintiff sued the mother of a boy nine years of age, who shot the plaintiff with a 22-caliber rifle. In that case the court said: "We think it is the well-settled law that a parent who permits his or her child to have possession of a deadly weapon when, on account of the child's youth and inexperience, he is incompetent to be intrusted with it, and the parent knows the danger that might happen to others from the use of such weapon, or in the exercise of reasonable care should know it, is liable for injuries inflicted upon others by the child's reckless use of such weapon. In other words, the parent is chargeable with negligence in such cases, if, from all the facts and circumstances, he should have known of the probable danger and injury that might result to others from permitting the child to have the weapon in his possession. . . The rule for such liability upon the part of the parent is not founded upon the relation of parent, but upon the ground of the negligence of the parent in permitting the child to have possession of the dangerous and deadly weapon, when, from his youth and inexperience, it might be reasonably anticipated that in the use of such weapon the child would inflict injury upon others."

In 46 C. J. 1332, the rule as deduced from the authorities is thus stated: "A parent may be liable for an injury which is directly caused by the child, where the parent's negligence has made it possible for the child to cause the injury complained of and probable that the child would do so, as where the parent negligently permits

a young child to use or have access to firearms or other dangerous weapons," but the "liability is based upon the rules of negligence rather than the relation of parent and child; and, as in other negligence cases, the negligence of the parent must have been the proximate cause of the injury. In other words, the injury must have been the natural and probable consequence of the negligent act, that is, a consequence, which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act." See also 20 R. C. L. 627, § 33; Meers v. McDowell, 110 Ky. 926 (62 S. W. 1013, 53 L. R. A. 790, 96 Am. St. R. 475); Whitesides v. Wheeler, 158 Ky. 121 (164 S. W. 335, 50 L. R. A. (N. S.) 1104, Ann. Cas. 1915D, 223); Neubrand v. Kraft, 169 Iowa, 444 (151 N. W. 455, L. R. A. 1915D, 691); Walker v. Klopp, 99 Neb. 794 (157 N. W. 962, L. R. A. 1916E, 1292); Gardiner v. Solomon, 200 Ala. 115 (75 So. 621, L. R. A. 1917F 380); Dickens v. Barnham, 69 Colo. 349 (194 Pac. 356, 12 A. L. R. 809); Elliott v. Harding, 107 Ohio St. 501 (140 N. E. 338, 36 A. L. R. 1128, 1137); Parham v. Lemmon, 119 Kan. 323 (244 Pac. 227, 44 A. L. R. 1500); Stewart v. Swartz, 57 Ind. App. 249 (106 N. E. 719); Salisbury v. Crudale, 41 R. I. 33 (102 Atl. 731); Charlton v. Jackson, 183 Mo. App. 613 (167 S. W. 670).

There is nothing strange or unusual in this doctrine. It is simply a restatement of the general rule applicable in negligence cases. In order for an act of negligence to give rise to a cause of action, it must be such that a person of ordinary caution and prudence should have foreseen or anticipated that some injury would likely result therefrom. *Mayor &c. of Macon* v. *Dykes,* 103 *Ga.* 847 (31 S. E. 443); *Southern Railway Co.* v. *Webb,* 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109); *Western & Atlantic R. Co.* v. *Bryant,* 123 *Ga.* 77 (51 S. E. 20); *Gillespie* v. *Andrews,* 27 *Ga. App.* 509 (108 S. E. 906).

Paragraph 11 of the original petition alleges that "when said knife was furnished defendant Ford Hulsey he was inexperienced in handling knives, careless, reckless, and indifferent as to the rights of others, all of which was well known or by the exercise of ordinary care and diligence ought to have been known by defendant B. H. Hulsey." In paragraph 29 the plaintiff, by amendment, alleges that "knowing that said Ford Hulsey was reckless, careless,

very indiscreet, and indifferent as to the rights of others, and wholly unfit to possess and control such a knife, defendant B. H. Hulsey owed the public and plaintiff a duty not to suffer or to permit his said minor son Ford Hulsey to gain or to have possession of said knife." The statement of the characteristics of Ford Hulsey are substantially the same in each paragraph, except that in the amendment the words, "wholly unfit to possess and control such a knife," are added. This, however, is not a direct and positive allegation as to the traits of Ford Hulsey, but is an indirect statement included wthin the main averment as to the knowledge of the defendant B. H. Hulsey, and appears to be a conclusion based upon the allegation made in the same connection, and likewise contained in paragraph 11 of the original petition, to the effect that the son, Ford Hulsey, was reckless, careless, indiscreet, and indifferent as to the rights of others. Since the petition is being considered upon demurrer, and the allegations must be construed most strongly against the plaintiff (*Krueger* v. *MacDougald,* 148 *Ga.* 429, 96 S. E. 867), the proper interpretation is that Ford Hulsey was wholly unfit to possess and control such a knife for the reason that he was reckless, careless, indiscreet, and indifferent as to the rights of others. *Fuller* v. *Inman,* 10 *Ga. App.* 680 (4) (74 S. E. 287). The fact that the defendant father knew that his son was possessed of these traits might have required him to forsee or anticipate that the son, by some act or omission of gross negligence or indifference, would likely inflict injury upon some person with this knife, but the knowledge of these propensities would not charge the father with further notice that his son would be guilty of the criminal act of wilfully, maliciously, and intentionally stabbing a playmate, without provocation, and with a weapon likely to produce death. The inexperience of Ford Hulsey "in handling knives" was so clearly not a causal factor that the allegation as to his inexperience need not be considered except to eliminate it as irrelevant and immaterial.

The son had attained the age of accountability under the criminal law (Penal Code of 1910, § 33), and the petition does not go so far as to show that he was possessed of a positively vicious or criminal disposition; and the presumption was that he would not commit the criminal offense of stabbing, or of assault with intent to murder, as charged in the petition. The petition fails to show that the father should have anticipated such conduct upon

his son's part, and therefore the act of the father in furnishing the knife could not be said to be the proximate cause of the plaintiff's injuries. The malicious and intentional act of the son was an occurrence which did not flow in the usual and ordinary course of events from a disposition which was merely reckless and indifferent, and it does not appear from the allegations that the father was forewarned and should have anticipated that such a thing would probably happen in consequence of his own act of furnishing the knife to his son. *Andrews* v. *Kinsel,* 114 *Ga.* 390 (2) (40 S. E. 300, 88 Am. St. R. 25) ; *Bowers* v. *Southern Railway Co.,* 10 *Ga. App.* 367 (3), 373 (73 S. E. 677).

The present case is distinguished from *Davis* v. *Gavalas,* 37 *Ga. App.* 242 (139 S. E. 577), in which the child was of such tender years that its parents should have known that it was incompetent and unqualified to use the velocipede upon the public sidewalk, and that injury to some person would likely result from the act of the parents in permitting the child to use the velocipede in the manner stated.

The case is similar to those cases in which it is sought to hold an owner liable for an injury by a "vicious animal of a harmless species." *Phillips* v. *Dewald,* 79 *Ga.* 732 (7 S. E. 151, 11 Am. St. R. 458). In the case of *Harvey* v. *Buchanan,* 121 *Ga.* 384 (49 S. E. 281), it was held that the owner of a dangerous or vicious mule who allows the same to go at large "is liable to one who sustains injury as a result of the vicious or dangerous tendency of the animal only in the event that the owner knows of its vicious or dangerous character. If he does not know this, he will not be liable for an injury which is not the usual and natural consequence to be anticipated from allowing an ordinary animal of that kind to go at large." See also *Browder-Manget Co.* v. *Calhoun Brick Co.,* 138 *Ga.* 277 (75 S. E. 243) ; *Van Harlengen* v. *Bearse,* 26 *Ga. App.* 473 (2) (106 S. E. 306).

If the plaintiff had been injured by some reckless, negligent, or indifferent act, as distinguished from a wilful, malicious, or intentional act, on the part of Ford Hulsey, and the instrument was the knife furnished by the father of the latter, the plaintiff might, perhaps, be entitled to maintain the action; but this is not the case as made by the petition, and we do not pass upon the supposed case. In *Spires* v. *Goldberg,* 26 *Ga. App.* 530 (106 S. E. 585), it ap-

peared that the merchants sold a pistol to a minor, contrary to the provisions of section 350 of the Penal Code. The purchaser lent the pistol to another minor, and it was discharged while the second minor was playing with and demonstrating it, with the result that a third child was injured thereby. The injured person brought suit against the merchants, alleging, among other things, that the defendants "were negligent in selling the pistol to a minor, in violation of the statute of the State of Georgia, that they were criminally negligent in so selling it, and were guilty of negligence per se, that they knew or by the exercise of ordinary care and forethought should have known that by reason of the immature age and lack of experience and understanding of the minor to whom they sold the pistol the public was endangered and some one was liable to be killed or injured by the weapon." In reversing a judgment sustaining a general demurrer to the petition, this court held as follows: "Where one has violated a penal statute of this State which forbids the sale of a pistol to a minor, and injury results therefrom, he should be held liable for the injury if it be a natural and probable consequence of the violation of the statute and should reasonably have been anticipated by the offender as a natural and probable result of his unlawful act."

It is noticed that the petition in that case did not disclose an intentional injury, and the decision does not deal with a situation of that sort. In the opinion it is said that if the minor who bought the pistol from the defendants had intentionally discharged it, causing injury to another, the defendants would have been liable without proof of any act of negligence on their part other than the illegal sale of the weapon; but this statement was in reference merely to an intentional discharge of the weapon, and not to an intentional act of shooting another therewith. Thus, our conclusion in the present case in no way conflicts with the decision in *Spires* v. *Goldberg,* since in that case there was no allegation that the weapon was used for the purpose of committing a crime; whereas in the present case the petition alleges, in effect, that the minor wilfully, maliciously, and intentionally used the knife in the commission of a serious criminal offense.

It is doubtful if the petition should be construed as charging a violation by the defendant of the provisions of section 350 of the Penal Code. The petition does not allege positively that the instru-

ment was a dirk or bowie-knife, but says merely that it was "a dirk or bowie-like knife;" in other words, that it was a knife like a dirk or bowie-knife. It may also be true that section 350 does not comprehend the act of a father in furnishing one of the described instruments or weapons to his minor son; but our conclusion is the same irrespective of these questions. It was said in the *Spires* case that "the purpose of the legislature, in the act making it a misdemeanor to sell a pistol to a minor, was twofold—to protect that class and to prevent injuries resulting from negligence in the handling of these dangerous weapons by irresponsible persons. Knowledge of this purpose in a legal sense was chargeable to the defendants when they violated the law by selling the pistol to the minor." Perhaps another purpose was to prevent the acquisition of criminal tendencies on the part of minors, but manifestly the legislature did not intend to say that a "pistol, dirk, bowie-knife, or sword-cane," is more likely to be used for *criminal* purposes in the possession of a minor than if sold or furnished to an adult. Surely, it was not the purpose of this statute to characterize and mark the youth as being of a *criminal* class, against which the public should be given special protection, although as said in the *Spires* case, one of the purposes of the act was to prevent injuries resulting from *negligence* in the handling of such weapons by minors. The plaintiff does not bring himself within the range of the protection which the statute was intended to afford, that is, protection against negligence, and therefore the case is not affected by the provisions of such statute. *Platt* v. *Southern Photo Material Co.,* 4 *Ga. App.* 159 (2 b, c) (60 S. E. 1068) ; *Elk Cotton Mills* v. *Grant,* 140 *Ga.* 727 (79 S. E. 836, 48 L. R. A. (N. S.) 656) ; Frontier Steam Laundry Co. *v.* Connolly, 72 Neb. 767 (101 N. W. 995, 68 L. R. A. 425).

As opposed to the view expressed in the *Spires* case, that the mere sale to a child of a prohibited weapon is within itself such an act of negligence as will render the seller liable for an injury negligently inflicted by the child with such weapon, compare Hartnett *v.* Boston Store, 265 Ill. 331 (106 N. E. 837, L. R. A. 1915C, 460) ; and further, on the general subject, see Pizzo *v.* Wiemann, 149 Wis. 235 (134 N. W. 899, 38 L. R. A. (N. S.) 678, Ann. Cas. 1913C, 803) ; Bolar *v.* Maxwell Hardware Co., 205 Cal. 396 (271 Pac. 97, 60 A. L. R. 429).

It is our opinion that the petition failed to set forth a cause of action against the father, and that the court therefore erred in not sustaining the general demurrer of that defendant.

*Judgment reversed. Jenkins, P. J., concurs,*

STEPHENS, J., dissenting. I think that under the ruling in *Spires* v. *Goldberg* (supra) the petition sets out a cause of action. See Penal Code (1910), § 350.