41953. DECO LEASING CORPORATION v. HARVEY et al.

Argued April 6, 1966—Decided September 6, 1966.

*Paul C. Myers, William I. Aynes,* for appellant.

*Hansell, Post, Brandon & Dorsey, Gary W. Hatch,* for appellees.

Pannell, Judge. The plaintiff appellant, Deco Leasing Corporation, brought an action against the defendant, G. R. Harvey and Carrier Atlanta Corporation, alleging in part:

"2. That on or about June 28, 1962, the petitioner was acting as an owner-general contractor engaged in erecting a building at the corner of Pryor and Decatur Streets, S. W., Atlanta, Georgia.

"3. That on that date and at all times material, the defendant Carrier Atlanta Corporation was engaged as a subcontractor by the petitioner, for the purpose of installing air conditioning equipment and related systems for the aforesaid office building.

"4. That on the aforesaid date and at all times material, the defendant George R. Harvey was employed by the defendant

Carrier Atlanta Corporation in the capacity of a welder, and as such was an agent acting both in the prosecution of and within the scope of the Carrier Atlanta Corporation's business.

"5. That the defendant Carrier Atlanta Corporation's work as subcontractor included the installation of a Marley cooling tower upon the roof of the aforesaid building.

"6. That as of this date, aforesaid Marley cooling tower had not been fully installed, and while said defendant was in the process of finishing the installation which had not then yet been completed and as a necessary step for completion of the installation of said tower, the larger water pipes which carry water to and from aforesaid cooling tower by necessity had to be coupled to the side of the cooling tower before installation would be complete.

"7. That at the time and place involved herein, the aforementioned cooling tower was not in the care, custody or control of the defendant Carrier Atlanta Corporation.

"8. That on June 28, 1962, at or about 1:30 p.m. the defendant George R. Harvey, an employee and agent of the defendant Carrier Atlanta Corporation, and acting both in the prosecution of and within the scope of defendant Carrier Atlanta Corporation's business and under the defendant Carrier Atlanta Corporation's control and direction, was engaged in welding two sections of the aforementioned water pipes together, and as such was welding in close proximity to aforesaid water tower, but that defendant George R. Harvey and through his agency, the defendant Carrier Atlanta Corporation was not working on aforesaid cooling tower, but only on pipes which would later be placed in close proximity to aforesaid tower.

"9. That the air conditioning tower near which the welding aforementioned was being done, was combustible, and contained combustible materials, including wood, paper and electrical wiring.

"10. That the defendants Carrier Atlanta Corporation and George R. Harvey knew that aforesaid cooling tower contained combustible material and that said tower was not fireproof.

"11. That at aforesaid time and place, the defendant George R. Harvey did use an electric welding machine and apparatus.

"12. That the aforesaid electric welding machine did in the

normal use thereof create many sparks, which would fly in all directions during the welding process, and in addition, during such use the welding machine did create many droplets of hot metal which would fall about in the area of the welding.

"13. That the defendants knew that such hot sparks and hot metal droplets would be created during the process of the welding to be done in the close proximity to the aforesaid cooling tower.

"14. That the defendant Carrier Atlanta Corporation did at aforesaid time and place order or authorize the defendant George R. Harvey to use such welding equipment under the conditions then and there existing.

"15. That the defendant Carrier Atlanta Corporation did not instruct George R. Harvey to shield a reasonable working radius of the cooling tower from flames, sparks and hot metal, with a flame proof material as a reasonable and necessary precaution to welding said pipes in the close proximity to aforesaid tower.

"16. That the defendant Carrier Atlanta Corporation did provide at the job site a small water hose, and this hose was located a couple of minutes away from the welding area.

"17. That this water hose produced only a small stream of water due to the small water pressure at the job location, and as a result this water hose when used in an attempt to extinguish the fire which is the basis of this action, proved totally inadequate.

"18. That the defendant Carrier Atlanta Corporation did not provide any other fire extinguishing equipment immediately available to the scene of the welding, prior to authorizing or ordering the defendant George R. Harvey, to use aforesaid welding equipment.

"19. That on June 28, 1962, there was in existence a municipal ordinance for the City of Atlanta entitled 'Fire Prevention Ordinance, Fire Department City of Atlanta,' Acts of 1948, which in Section 710 stated: 'During the construction, repair or demolition of any building, or structure, or of any appurtenance in any building or structure, welding or cutting shall not be conducted where sparks or molten metal will come in contact with combustible material unless such material is adequately shielded and portable extinguishing equipment provided nearby.'

"20. That the defendant Carrier Atlanta Corporation did not supply an additional person to act as firewatcher and failed to have such a firewatcher placed and positioned at the welding site so that he could rapidly detect and notify of any starting fire.

"21. That the defendant George R. Harvey did not shield a reasonable working radius of the cooling tower from flames, sparks and hot metal, with a flameproof material as a reasonable and necessary precaution to welding said pipes in the close proximity of aforesaid tower.

"22. That the defendant George R. Harvey did weld in such a manner so as to allow hot sparks and metal droplets to enter the aforesaid tower and into the immediate vicinity of the interior combustible materials.

"23. That the defendant George R. Harvey did not perform his job of welding in a workmanlike manner, and as a reasonable man under the conditions then and there existing.

"24. That as a result of the defendant's failure to: a. shield a reasonable working area, b. weld in such a manner as to prevent hot sparks and metal droplets from entering the cooling tower, c. provide a firewatcher in a proper location, d. and provide adequate fire extinguishing equipment, a fire was caused, the result of which destroyed the aforesaid Marley cooling tower.

"25. That the resulting fire created an intense heat, which completely burned out the cooling tower, fans, motors, wiring, belts, pipes and other related parts reducing the tower to worthless salvage, and necessitating the replacement of the entire cooling tower.

"26. That the value of the Marley cooling tower before the fire was $9,719.46, and the value after the fire was nothing, a diminution of $9,719.46 for which amount petitioner herewith sues.

"27. That the damages in the amount of $9,719.46 sustained by the petitioner were directly and proximately caused by the negligence of the defendants in each and all of the following respects: A. The defendant Carrier Atlanta Corporation was negligent: 1. In ordering or authorizing George R. Harvey to use such welding equipment when under the circumstances there and then existing, it did not appear reasonable that such equip-

ment could be safely employed due to the danger of fire. 2. In failing to instruct George R. Harvey to shield a reasonable working radius of said cooling tower, as a reasonable and necessary precaution to welding such pipes. 3. In failing to supply an additional person to act as firewatcher and in failing to have such a firewatcher placed and positioned at the welding site so that he could rapidly detect any starting fires. 4. In failing to provide adequate portable extinguishing equipment nearby, as required by the Fire Prevention Ordinance, Fire Department, City of Atlanta, Acts of 1948, Adopted October 18, 1948, Approved October 19, 1948, which failure amounts to negligence per se. B. The defendant George R. Harvey and through his agency relation, the defendant Carrier Atlanta Corporation, was negligent: 1. In using such welding equipment when under the circumstances then and there existing, it did not appear reasonable that such equipment could be safely employed due to the danger of fire. 2. In failing to shield a reasonable working radius of said cooling tower from flames, sparks, molten metal droplets and hot metal as a reasonable and necessary precaution to welding said pipes, as required by the Fire Prevention Ordinance, Fire Department, City of Atlanta, Acts of 1948, Adopted October 18, 1948, Approved October 19, 1948, and said failure amounts to negligence per se. 3. In welding in such a manner so as to allow hot sparks, flames and metal droplets to enter the aforesaid tower and into the immediate vicinity of the interior combustible materials. 4. In failing to weld in a workmanlike manner, and in failing to weld as a reasonable man under the conditions then and there existing. 5. In failing to keep a close lookout for a fire which might start in the combustible tower."

At the close of the evidence a motion for directed verdict on the part of the servant Harvey was sustained and a motion for a directed verdict for the defendant master was overruled, but a motion for judgment notwithstanding the verdict was granted. The plaintiff appealed from both rulings.

In this State negligence, to be actionable, carries with it the concept of foreseeability. *Hulsey v. Hightower,* 44 Ga. App. 455, 459 (161 SE 664). In view of the concept of responsibility for negligence being based on foreseeability we think it may safely

be said that under the allegations of the petition and the grounds of negligence alleged no recovery could be had against either defendant in the absence of knowledge that the tower contained combustible material likely to ignite and burn when contacted by the sparks from the welding being done. The evidence is entirely lacking as to knowledge on the part of either defendant; on the contrary, the evidence shows and demands the opposite conclusion. Constructive knowledge is neither alleged nor shown by the evidence. The petition expressly alleges "that at the time and place involved herein, the aforementioned cooling tower was not in the care, custody or control of the defendant Carrier Atlanta Corporation," and the only evidence is to the effect that someone else supplied and placed the tower.

The uncontradicted evidence discloses that there was no way of shielding the inflammable material contained in the tower; that there was no reason to shield the working area as they were working on a concrete roof; that the only thing that could have been done was to have taken the cooling tower apart and removed the inflammable materials to a safe distance; that the defendant had at the scene a $CO_2$ fire extinguisher and a water hose, although the water pressure was low; that the defendant engaged in the actual welding could not see the flames because of the shield he wore to protect his eyes from the intense glare of the torch; that a helper was performing the duties of watching for a fire but that the fire was well started before it was seen by him and that the only place that it could have been better seen was from a place inside the tower or on the top of it; that the material in the tower was highly inflammable and once ignited was difficult to put out with water and that the fire department when it arrived was unable to put out the fire except with much difficulty. Expert testimony was had to the effect that the manner and means used in doing the welding was proper, that the hot sparks and metal droplets would not cause wood to ignite, and that all cooling towers so far as all the witnesses knew contained wood rather than the material found in the cooling tower in the present case. One of these experts testified after seeing material in the cooling tower that, if he had seen it before starting to weld on the tower, he would see no reason for alarm.

There was no evidence to show that inspecting the material by looking at it would have disclosed its true nature. The trial court did not err in directing the verdict in favor of the servant and in granting the judgment notwithstanding the verdict in favor of the defendant master.

*Judgment affirmed. Felton, C. J., and Frankum, J., concur.*